**Daniel SCOTT**

v.

**Harold BRADLEY, etc.**

**Civ. A. No. 77–0410–R.**

United States District Court, E. D. Virginia, Richmond Division.

March 24, 1978.

Order April 12, 1978.

Robert P. Geary, Richmond, Va., for plaintiff.

John B. Mann, Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

The above styled action was heard on its merits in open court 9 March 1978. Liability was found in favor of the plaintiff and the Court instructed counsel for both parties to brief the matter of damages and injunctive relief sought. Said briefs are now before the Court and the matter is ripe for disposition.

■ In regard to compensatory damages, the Court finds and awards plaintiff the following:

1. Plaintiff lost one step in salary increase from July 1976 through June 1977 in the amount of $650.
2. Plaintiff had to pay rent of $150 per month for 18 months for a total of $2,700.
3. Humiliation and embarrassment caused to plaintiff by defendant is in the amount of $1,000.

4. Plaintiff's suspension by defendant was appropriate and hence no award of back pay, other than that awarded in paragraph 1 above, can be made.
5. Plaintiff's total compensatory damages are in the amount of $4,350.00.

In regard to court costs, the Court finds and awards plaintiff $557.20 consisting of filing fee ($15.00), service fees ($15.60), and court reporter ($526.65).

In regard to punitive damages, although there is authority that punitive damages may be awarded under the civil rights statutes, *see, Spence v. Staras,* 507 F.2d 554, 558 (6th Cir. 1974), punitive damages are not required in this case.

■ Counsel fees should be such amount as will fairly compensate counsel and encourage counsel to undertake representation in civil rights cases. *See Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). A one-third contingent fee in the field of personal injury has proved most efficacious in encouraging counsel to represent injured plaintiffs in even the marginal cases of doubtful liability and transitory injury. There is no reason to believe similar awards where compensatory damages, as here, are substantial, would not have the same effect in civil rights cases.

The Court has fully considered the provisions of Disciplinary Rule 2–106, *see, Waters v. Wisconsin Steel Works of Int. Harvester Co.,* 502 F.2d 1309, 1322 (7th Cir. 1974), and giving due consideration to those factors sees no reason to modify the percentage award. Accordingly, in regard to counsel fees, the Court finds and awards plaintiff counsel fees in the amount of $1,450.00.

■ In deciding the plaintiff's prayer for injunctive relief, the Court has considered the evidence of racial discrimination found in the trial of this action on the merits. In view of these findings the Court holds that an injunction should issue to require the defendant to refrain from such or similar unlawful activity in the future. The Court will not enjoin the defendant to re-hire the

plaintiff depending upon the outcome of his pending criminal appeal since the outcome on appeal may not depend upon a determination of plaintiff's guilt or innocence of the acts charged.

Accordingly, based on the above findings, the Court will enjoin the defendant from discriminating in discipline, conditions of employment, and promotion on the basis of race.

An appropriate order shall issue.

### ORDER

In accordance with the memorandum this day filed, and deeming it in the best interests of justice, the Court doth ADJUDGE and ORDER the following:

1. Plaintiff be awarded compensatory damages in the amount of $4,350.00;
2. Plaintiff be awarded his court costs in the amount of $557.20;
3. Plaintiff be awarded counsel fees in the amount of $1,450.00;
4. Judgment shall enter for plaintiff against defendant in the amount of $5,800.00 and costs assessed in the amount of $557.20;
5. Defendant is enjoined from discriminating in discipline, conditions of employment, or promotion on the basis of race.

Let the Clerk send a copy of this order and the accompanying memorandum to all counsel of record. It is further ORDERED that the order and memorandum be served upon the defendant.

### ORDER

Plaintiff's motion of 31 March for reconsideration of attorney's fees must be denied.

Counsel for plaintiff is an able and conscientious lawyer who performed valuable services for his client. The Court weighed these factors carefully in setting counsel fees as well as the factors mentioned in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–20 (5th Cir. 1974).

The Court has, at the suggestion of counsel, also studied the exhaustive but polemi-cal article in 126 U. of Pa.L.Rev. 281 entitled "Court Awarded Attorneys' Fees: What is Reasonable"? This article was prepared under the auspices of the Council for Public Interest Law, Washington, D.C., which represents itself upon telephone inquiry as having been created for the purpose of obtaining more adequate funding for public interest law advocates. Though the author's arguments may be sound, his objectivity is clearly suspect.

Nevertheless, having considered his arguments the Court adheres to the view that the primary purpose behind the legislation was to encourage lawyers to represent persons in the civil rights field. Even without such protective legislation lawyers have been massively encouraged to enter the personal injury field upon the expectation of being compensated on a contingent fee basis. The Court recognizes that many types of civil rights cases do not result in any monetary reward and others result in only minimal monetary awards. Obviously, in such cases a percentage fee would be inappropriate. This is not such a case, however, and the Court need not base a fee determination on conditions contrary to fact.

The Court recognizes that there are other differences between civil rights torts and personal injury torts. For instance in the personal injury field the contingent fee is paid out of the plaintiff's recovery. Under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 the fee is an additional recovery from defendant, taxed as part of the costs. This leaves a civil rights plaintiff's lawyer free to seek fee adjustment through contract with his client without violating law, ethics or custom.

The fact that the defendant is required to answer in damages to fully recompense a plaintiff and then, over and above that, to fully recompense the plaintiff's lawyer (as well as his own lawyer) brings up a consideration of how much recompense is it reasonable to require a defendant to pay. Serious criminal offenses often draw fines of lesser magnitude than the aggregate of payments to be required of defendant in

plaintiff's proposal. Though a civil rights violation is a serious offense it is, after all, a civil offense not a crime.

The Court must also bear in mind that while lawyers are to be encouraged to accept civil rights cases they should not be encouraged to take over the cases. While many civil rights claims, especially class action claims, are extremely complex and result in massive recoveries for plaintiffs, others are relatively simple and, as was the case here, can be tried in half a day. This case actually took four hours and forty-three minutes of trial time and did not involve any pre-trial motions of substance. Had the Court awarded the sum sought the case would have been the lawyer's case with the client as an appendage. In setting the award the Court must try to keep the perspective in mind of who is the client and who is the lawyer. The lawyer cannot be permitted to subsume the case.

Still another consideration is the problem of over-encouragement. Neither civil rights plaintiffs nor their lawyers should be permitted to view a civil rights case as a pot of gold. Within the context of this suit, the violation of one's civil rights is not the worst iniquity known to man and the recompense to the plaintiff and his lawyer should reflect that it is a civil wrong that is being corrected, not a vile and unforgivable blasphemy. To establish the principle that plaintiff seeks would be disproportionate to the wrong as well as to the remedy.

It is argued that the setting of a fee on the basis of the "going" hourly rate is the only reasonable basis; or that if not set at the going rate it ought to be set on an hourly basis at a rate not less than that set for appointed defense counsel in criminal cases.

■ In the first place, though representation of persons who believe they have been subjected to civil rights violations and who seek monetary or injunctive relief is a part of a monumental national effort to eradicate invidious discrimination, this effort has not eclipsed the national commitment to see that those accused of crime are properly defended. There can be no reasonable basis for preferring civil rights lawyers over criminal defense lawyers in setting counsel fees.[1]

A further consideration is that when a lawyer is setting his hourly rate which he expects his own client to pay his client can simply reject the proffered contract as too expensive for his needs. The civil rights defendant can only "reject" the asked fee by paying a lawyer to convince the Court that it is "too expensive."

Moreover, when a lawyer is working for his own client he sensibly limits his research and preparation in proportion to the magnitude of the results sought by his client and his client's perceived ability and willingness to pay. No such constraints work on a civil rights plaintiff's counsel. Indeed, the temptation is just the opposite. Since "the enemy" will be paying anyway, counsel is induced to read *every* case, depose *every* witness, examine fully *every* tactic, leave *no* stone unturned; or, stated in terms of the instant case, spend 123.7 hours preparing for a 4.8 hour trial.

■ Though civil rights attorneys should be encouraged to represent plaintiffs they should not be encouraged to overprepare the case. Since there are no built in economic restraints as in billing one's own client, the Court must exercise the restraint itself by eschewing a straight hours-cum-fee formula.

■ Often the size of the recovery is a good measure of the worth of the case, or, expressed differently, the amount of the verdict is often a good indicator of the reasonableness of time expended and fee to be awarded. In the Court's view it is an excellent indicator in this case. In a given case the size of the monetary recovery may

1. As a sidelight on the subject of setting criminal defense fees, this Court requires the Clerk to maintain an accurate account of the time spent in open court. The defense counsel's estimate of that time as set forth on his vouch- er *almost without exception* substantially exceeds the actual time spent. The Court recognizes that the lawyers involved are not dishonest. They simply perceive the time spent on a client's behalf as being longer than in fact it is.

be irrelevant to the worth of the case. In such a case a percentage fee would be impossible to apply. In other cases the recovery may be so great that a substantial percentage fee would be egregious. The percentage would have to be reduced. As asserted in the law review article at p. 292:

> The only truly consistent thread that runs throughout federal court decisions on attorney's fees is their almost complete inconsistency.

Accepting this statement as true it may be that the cases, lawyers, trials, issues, plaintiffs, defendants and judges vary so from case to case that consistency would be a hobgoblin rather than a virtue.

In any event, the trial court is called upon to determine and award a "reasonable" fee. This Court has undertaken to do that on the basis of its unique knowledge of the case as it was presented to the Court throughout all stages of trial preparation, trial and post-trial proceedings.

Let the Clerk send a copy of this order to all counsel of record.