Gerald TAYLOR, Lee Crawford, Michael Bush, and Clayford McGhee, on behalf of themselves and all persons similarly situated, Plaintiffs,

John Carl Overstreet, Intervening Plaintiff,

v.

UNION CARBIDE CORPORATION, Defendant.

Marshall HAIRSTON, Plaintiff,

v.

UNION CARBIDE CORPORATION, Defendant.

Civ. A. Nos. 76–0703 CH, 78–2010.

United States District Court, S. D. West Virginia, Charleston Division.

April 11, 1980.

**2**

E. Gail Falk, Charleston, W. Va., Robert S. Baker, Fayetteville, W. Va., Theodore R. Dues, Julian R. Birnbaum, Charleston, W. Va., for plaintiffs.

David D. Johnson, Roger A. Wolfe, Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

In these consolidated civil actions, plaintiffs seek to represent a class of their fellow black employees in the prosecution of claims against the defendant premised upon instances of alleged racial discrimination. This order deals with the issues arising from plaintiffs' Motion For Certification Of Class, filed on August 24, 1978. In addition to the evidence presented to the court at the evidentiary hearing on the motion, the court has considered the contents of the case file generally and more specifically the items to which the court's attention was directed by the "Record Designation By Plaintiffs and Defendant Re Evidence For Class Determination" received on April 13, 1979.

These civil actions are premised upon alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiffs seek injunctive relief and compensatory and punitive damages for the injuries they claim to have suffered due to defendants' asserted racially discriminatory policies.

■ There are two general principles which the court must consider in approaching a decision on the class certification motion. The first principle is that "although suits involving racial discrimination lend themselves generally to class treatment, the Title VII plaintiff nonetheless must satisfy the requirements of Rule 23, FRCP, and the burden of proving this rests upon the plaintiff." *Goodman v. Schlesinger*, 584 F.2d 1325, 1331 (4th Cir. 1978). The *Goodman* court relied upon fourth circuit precedent for this rule and upon *East Texas Motor Freight System, Inc., v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). In *East Texas*, the Supreme Court emphasized that Title VII suits are not to be held to a less stringent standard for class certification purposes than are other categories of civil litigation. Rather, Rule 23, Fed.R. Civ.P., is to be applied as to all of its requirements and no one requirement is to be deemed automatically fulfilled by a mere reference to the fact that the suit is brought under Title VII. The point is especially germane when one considers the definition as well as the representation of a proposed class. The Court in *East Texas* held that the named plaintiff must have suffered the very acts of racial discrimination for which classwide relief is sought.

431 U.S. at 403–04, 97 S.Ct. at 1896–97. If the named plaintiff has not himself suffered under the application of the asserted discriminatory act or policy, then he has not been injured by it and is "simply not eligible to represent a class of persons who did allegedly suffer injury." 431 U.S. at 404, 97 S.Ct. at 1897. This same point has been made in *Hill v. Western Electric Company, Inc.*, 596 F.2d 99, 101–02 (4th Cir. 1979), *cert. denied*, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979). In *Hill*, the court of appeals recognized that the looser requirements for representation set forth in *Barnett v. W. T. Grant Co.*, 518 F.2d 543 (4th Cir. 1975), were drawn tighter by the Court in *East Texas*. Thus, the interpretation of *Barnett* and similar cases urged by the named plaintiffs must be tempered by the strictures of *East Texas* and *Hill*.

The second guiding principle for the court arises from a number of decisions by the United States Court of Appeals for the Fourth Circuit. In *Doctor v. Seaboard Coast Line Rr. Co.*, 540 F.2d 699, 707 (4th Cir. 1976), the court of appeals indicated that, when a district court is confronted with a motion for class certification, the court should look to the pleadings and to other information beyond that contained in the complaint.

"The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable." [Quoting *Huff v. N. D. Cass Co. of Alabama*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc).] . . . But a preliminary hearing, addressed not to the *merits* of plaintiff's individual claim, but to whether he is asserting a claim which, *assuming its merit*, will satisfy the requirements of Rule 23, has never been regarded as violative of the rule stated in *Eisen* . . . .

540 F.2d at 707 (footnotes omitted) (emphasis in the original). Thus, this court must first identify the claims validly raised by the named plaintiffs and then, assuming plaintiffs will prevail on those claims, ascertain the proper definition for the proposed class and determine whether or not such a class in fact exists. *See also, Goodman v. Schlesinger*, 584 F.2d 1325 (4th Cir. 1978); and *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976).

Nevertheless, even though the merits of the named plaintiffs' claims are at this juncture to be assumed, the court must proceed with full attention to the requirements of Rule 23, Fed.R.Civ.P. Within those requirements are reposed the demands of due process to which the absent class members are entitled. The court as well as the parties must be mindful that, should this proposed class be certified, the individual rights of the class members will be affected whether the named plaintiffs win or lose on the merits. The individual problems of due process must not be obscured by the class action mechanism. For, as noted by Judge Godbold, "counsel, and at times the courts, [often move] . . . blithely ahead tacitly assuming all will be well for surely the plaintiff will win and manna will fall on all members of the class. It is not quite that easy." *Johnson v. Ga. Highway Express, Inc.*, 417 F.2d 1122, 1127 (5th Cir. 1969) (Godbold, J., specially concurring).

I. The Proposed Class Definition

In order to determine the scope of the claims asserted on behalf of the class, the court must first look to the pleadings. In this litigation, the pleadings consist of the complaint, as amended, of Gerald Taylor, Lee Crawford, Michael Bush, and Clayford McGhee; the consolidated complaint, as amended, of Marshall Hairston; and the intervening complaint of John Carl Overstreet. The named plaintiffs (as the court will refer to all of the above-noted persons) assert racial discrimination claims which may be categorized as follows:

1. Failure of defendant to prevent its supervisors from discriminating on a racial basis against defendant's black employees by threats, intimidation, and assignment to onerous or unsafe duties.

2. Failure of defendant to prevent its employees from engaging in racial slurs against, making physical attacks upon, or using other methods of harassment of its black employees.

3. Failure of defendant to promote its black employees from laborers in the construction department to skilled craft positions, including the denial of opportunities to undergo the required training for entry into a craft position.

4. Defendant's establishment and application of disciplinary rules, policies, and procedures which in purpose and in practice discriminated against defendant's black employees so as to bring about unfair disciplinary actions, suspensions and terminations of the employment of its black employees.

5. Defendant's harassment of its black employees in all of the above four ways in retaliation for the complaint by some of the named plaintiffs to state and federal equal employment agencies.

Various combinations of the named plaintiffs are said to have suffered one or more of these claimed abuses.

The evidence adduced by the named plaintiffs at the evidentiary hearing and in the record supports their claims in the pleadings that they suffered from the recited abuses. Assuming the occurrence of the individual abuses allegedly suffered by the named plaintiffs, the court finds that the above five categories contain the claims of concern in this case. The court also concludes that each of these categories of abuse was either presented to the requisite administrative agency or reasonably grew out of the investigation of the initial charges insofar as the Title VII claims are concerned. *E.E.O.C. v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976); and *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F.Supp. 371, 376 (E.D.Va. 1976). Alternatively, each claim can be prosecuted under 42 U.S.C. § 1981 without the need to exhaust administrative remedies.

The locus of the activity of which the plaintiffs complain centers upon the Con-

struction Department of the defendant. The Construction Department is headquartered at Institute, West Virginia. The named plaintiffs, in various combinations and at various times, were or are employed by the defendant in its Construction Department and were or are assigned to work at one or more work sites. The work sites are the Institute plant, the South Charleston plant, the South Charleston Technical Center, the Alloy plant, and the Marietta, Ohio, plant. At some of the pertinent times, the Construction Department also performed work at the Sistersville, West Virginia, plant; however, none of the named plaintiffs assert that acts of racial discrimination occurred to any of them there. Thus, the Sistersville plant will be ignored for purposes of this order.

The evidence also revealed that the named plaintiffs were only asserting claims premised upon their employment as either hourly laborers or craft-trainees. Thus, the proposed class definition must be limited to those black employees who were or are either hourly unskilled laborers or craft-trainees.

The proposed definition for the class offered by the named plaintiffs is set forth as follows in their motion for class certification:

All black persons now employed or employed for any period of time subsequent to February 21, 1972, in West Virginia in defendant's construction division, and all black persons now employed or employed for any period of time subsequent to February 21, 1972, in defendant's construction division whose home office or place of hire was in West Virginia.

The court first notes that the defendant's objection based on the applicability of the statutes of limitations and the effect of such statutes on the scope of the class will be by-passed for the present in light of the court's ultimate decision on the motion. In any event, the proper statutes of limitation must be decided at a later date for purposes of decision on the merits and for proper determination of the scope of the class. For now, the court will accept the plain-

tiffs' February 21, 1972, date as the limiting time period.

In keeping with this discussion, the court concludes that a proper definition of the proposed class is as follows:

All black persons now employed or employed for any period of time subsequent to February 21, 1972, by the defendant's Construction Department, headquartered at Institute, West Virginia, who either were assigned to work at defendant's facilities at Institute, Alloy, or South Charleston, West Virginia, including the Technical Center, or were hired in West Virginia and assigned to work at defendant's facilities at Marietta, Ohio; *Provided that,* all such black persons were either employed as hourly unskilled laborers or as craft-trainees; and *further Provided that,* such black employees suffered racial discrimination in the form of

(1) the failure of defendant to prevent its supervisors from discriminating on a racial basis against such black employees by threats, intimidation, and assignment to onerous or unsafe duties; or,

(2) the failure of defendant to prevent its employees from engaging in racial slurs against, making physical attacks upon, or using other methods of harassment of such black employees; or,

(3) the failure of defendant to promote such black employees from hourly unskilled laborers to skilled craft positions due to racial discrimination; or,

(4) the defendant's establishment and application of disciplinary rules, policies, and procedures which in purpose and in practice discriminated against such black employees so as to bring about unfair disciplinary actions, suspensions and terminations of the employment of such black employees; or

(5) the defendant's harassment of such black employees in any or all of the above four ways in retaliation for the complaint by some black employees to state and federal equal employment agencies.

With this rather laborious class definition in mind, the court next turns to the issues raised by Rule 23(a), Fed.R.Civ.P.

## II. The Requirements of Rule 23(a)

The named plaintiffs seek to have the class defined as one under Rule 23(b)(2) for equitable relief and under Rule 23(b)(3) for purposes of the damage claims at law. Before turning to those questions, however, the court will direct its attention to Rule 23(a):

PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In 1 H. B. Newberg, *Class Actions: A Manual for Group Litigation at Federal and State Levels,* § 1110, at pp. 179–180 (1977) (hereinafter referred to as *Newberg*), the author discusses the interdependency of requirements (1) and (2) of Rule 23(a):

The common question prerequisite is interdependent conceptually with the notion of joinder impracticability under 23(a)(1). Consideration of the common questions issue requires an answer to the question, "Common to whom?" Correspondingly, when one considers the impracticability of joinder, one necessarily perceives this issue with respect to the common questions raised for adjudication .... The joinder impracticability and common questions tests together form the underlying conceptual basis supporting class actions. When these two interdependent conditions are present, the action is considered prima facie as one naturally calling for a unitary adjudication. The class action concept is, therefore, most easily understood if the requirements of 23(a)(1) and (a)(2) are viewed as a unit. That is, a class action is proper

only when there is a group of persons who share a common issue and are so numerous that joinder of them all would be impracticable. [Footnotes omitted.]

Further on, the author keys his discussion specifically to the standard applicable to Rule 23(a)(2):

Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the (a)(2) prerequisite is qualitative rather than quantitative— that is, there need be only a single issue common to all members of the class. 1 *Newberg* § 1110a, at p. 180 [Footnotes omitted].

The instant case raises issues not typical of the standard Title VII case. The usual issues concerning standards used for hiring or promotion or differentials in wage rates or categories of job assignments are not present here, although this action does involve some promotion and unsafe job duty aspects. Nor does this case seem to involve any overarching formal policy. Rather, this action in the main proceeds upon the premise that the defendant either has failed to prevent or has encouraged its supervisors and white employees to racially discriminate against certain black employees in their day-to-day activities while on the job. The allegations in the complaint, when fortified by the evidence, indicate that the claimed harassment allegedly inflicted upon the hourly black employees of defendant's construction department is perceived as the manifestation of an informal policy on the part of the defendant to allow or even, perhaps, encourage such harassment on a purely racial basis.

The court concludes that each of the items of alleged harassment enumerated in the court's proposed class definition is common to a substantial group of black hourly employees or craft-trainees employed by defendant's construction division or department. The undefined number of affected black persons is one which, due to the number of past and present black employees, is impracticable of joinder. While the evidence adduced to date indicates that there may have been approximately 92 black employees so afflicted through 1977, all of whom plaintiffs contend were mistreated by defendant's white employees and supervisors in one or more of the ways set forth in the court's class definition above, the evidence is not yet clear on just what the numerical groupings will prove to be on each item of harassment. The court, however, is satisfied that each grouping does contain a sufficient number of employees to meet the requirements of Rule 23(a)(1) and (a)(2).

Turning next to the requirements of Rule 23(a)(3), the court is of the opinion that as a group the claims of the named plaintiffs are typical of the claims of the class. The court recognizes that each of the named plaintiffs may not eventually show that he has been affected by each enumerated item of racial harassment. On the other hand, taken as a group, the named plaintiffs do allege all of the items of harassment and their testimony is sufficiently credible to show at this time that each has a sufficiently broad involvement with all the asserted claims to be able to satisfy the typicality requirement. Any deeper development of the individual claims of the named plaintiffs at this stage would delve unduly and prematurely into the merits of the individual claims. Rather, the court is presently satisfied that each named plaintiff does present claims which are typical of the enumerated claims of harassment. Just as not all members of the class can be said to have suffered each and every item of harassment, not all of the named plaintiffs need to have so suffered in this factual setting. The named plaintiffs' individual claims so overlap as to present all of the enumerated items of harassment. Thus, the court is of the opinion that the requirements of *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), are met. The court further concludes that, from the standpoint of manageability of the action, utilization of the overlapping claims of the named plaintiffs to represent the entire class is preferable to the creation of individual classes or subclasses. Under either method, the same result would ultimately be achieved.

■ The last requirement of Rule 23(a) concerns the ability of the named plaintiffs to fairly and adequately protect the interests of the absent class members. First, however, the court must rule upon objections to the admissibility of defendant's exhibits 12–A through 12–J as well as plaintiffs' exhibit 1. Those exhibits concern settlement negotiations entered into by counsel for the parties. Defendant contends that its exhibits show that the named plaintiffs are not adequate representatives of the proposed class since the exhibits reveal, according to defendant, that the named plaintiffs are solely interested in the collection of personal money damages for themselves to the exclusion of the class. Plaintiffs' objection to the exhibits is grounded on Rule 408 of the Federal Rules of Evidence whereunder offers to compromise are inadmissible to prove liability or invalidity of a claim or its amount. As defendants argue, however, the exhibits are not offered to prove or disprove liability or amount, but simply to show that the plaintiffs are not to be trusted with the fiduciary duties imposed upon those who would represent a class composed of members said to be similarly situated.

The court concludes that the exhibits are relevant to the determination of this motion and are admissible. The negotiations contained within those exhibits are laden with information germane not only to the adequacy of the named parties as representatives of the class but also as to the competency of counsel for the plaintiffs to prosecute this case. The information gleaned from the settlement exhibits plus the court's awareness of the diligence of the named plaintiffs in pursuing this action impels the conclusion that the named plaintiffs will fairly and adequately protect the interests of the absent class members. Furthermore, the court's familiarity with the quality and industry of counsel for the plaintiffs, coupled with the caliber of their representation in this matter to date, causes it to conclude they are competent and adequate to prosecute this matter.

■ Remaining for determination is whether each of the named plaintiffs may represent the class should one be finally certified under (b)(2). The file reflects that named plaintiffs Lee Crawford and John Carl Overstreet have not received right-to-sue letters from the Equal Employment Opportunities Commission. Thus, they have not exhausted their administrative remedies and are not permitted to prosecute a Title VII suit on their own behalf although they may participate as members of the class seeking Title VII relief. Of course, neither Crawford nor Overstreet is barred by the exhaustion requirement from seeking equitable relief under 42 U.S.C. § 1981 and may represent a class for damages under § 1981. The other named plaintiffs have exhausted their administrative remedies and are thus proper parties to prosecute a Title VII suit and to represent a (b)(2) class seeking relief under Title VII.

### III. Rule 23(b)(2)

■ The named plaintiffs have requested certification pursuant to Rule 23(b)(2) for purposes of equitable relief and pursuant to Rule 23(b)(3) for damages. Looking first to the requirements of Rule 23(b)(2), the court concludes that this case is a proper one for certification under that rule insofar as injunctive relief and equitable money awards are concerned. Thus, those claims under Title VII and 42 U.S.C. § 1981 which are equitable in nature will be treated in a (b)(2) class context.

The history of Rule 23(b)(2) indicates that, albeit not exclusively, it was designed for use in civil rights cases. 1 *Newberg* § 1145a, at pp. 240–41. As the author of that treatise notes, there are two basic requirements under Rule 23(b)(2):

First, the party opposing the class must have acted or refused to act or failed to perform a legal duty, on grounds generally applicable to all class members. Second, "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, [must be] appropriate." [Quoting from

*Notes of Advisory Committee on Rules,* 39 F.R.D. 69, 102 (1966).] 1 *Newberg* § 1145, at p. 239 (insertion in the original) [Footnote omitted].

Under the factual circumstances presented in this case, Title VII and the equitable component of 42 U.S.C. § 1981 readily lend themselves to fulfilling the second requirement. In part, the named plaintiffs seek equitable relief in the form of injunctions forbidding the enumerated items of alleged harassment as set forth above. As to the first requirement, the heart of the named plaintiffs' claim is that the defendant has either overtly or implicitly adopted a policy of racial discrimination against its hourly black employees or craft-trainees so as to encourage defendant's white employees and supervisors to engage in various forms of harassment of such black employees. This alleged policy is one which constitutes either an act or failure to act on grounds generally applicable to all of the alleged class members. Thus, the court concludes that the proposed class is certifiable under Rule 23(b)(2).

### IV. Rule 23(b)(3)

In their reply brief, the named plaintiffs have also requested class certification for recovery of damages at law pursuant to Rule 23(b)(3) which provides as follows:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Legal damages are recoverable pursuant to 42 U.S.C. § 1981 by means of the general remedies section of the Civil Rights Act of 1866, 42 U.S.C. § 1988. *Johnson v. REA,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *See also, Scott v. Bradley,* 455 F.Supp. 672 (E.D.Va.1978); and *Spence v. Staras,* 507 F.2d 554 (7th Cir. 1974) (punitive damages). The named plaintiffs have demanded a jury trial on all issues so triable, which demand the defendant appears to resist. Without deciding the dispute at this time, the court notes that should a jury trial be available in this action, the most likely area for a jury to be used would be for legal damages under 42 U.S.C. §§ 1981, 1988.

Initially, the court is of the opinion that it would be improper to append the legal damages claims to the equitable claims and thus incorporate all of the claims into the (b)(2) class certified above. The number of individuals who are potential claimants for legal damages includes, as earlier indicated, the some 92 black hourly laborers and craft-trainees who may have suffered the assumed discriminatory injuries through 1977, as well as employees hired since 1977 and future employees who may have sustained or may in the future sustain similar injuries. This combined number of persons, taken together with the dollar value of the legal damages done to each such person would appear to indicate a potentially substantial cumulative damage claim.

In 1 *Newberg* § 1145d, at p. 247, the text writer expresses the following rationale for certifying two classes:

The pendent damage claims may be so large that they cannot be processed within the limits of a (b)(2) class action. A separate class certification of pendent claims under subdivision (b)(3) may be necessary. If separate classes are certified under subdivisions (b)(2) and (b)(3) for equitable and damage claims respectively, a federal court will normally consider the issue of liability on the damage portions of the controversy first.[177]

Findings on liability for the damage portions of the controversy will normally be res judicata of the equitable claims. [One footnote omitted.]

Footnote .177 states:

The purpose of this order of trial is to preserve the Seventh Amendment right to trial by jury. *Beacon Theaters Inc. v. Westover* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d [988] 998 (1959). See generally Wright & Miller "Federal Practice and Procedure: Civil" Section 2338 (1971).

Basically, the same persons would be members of the two classes. Thus, the class definition for (b)(3) purposes is the same as that stated above for the (b)(2) certified class. Certification of a (b)(3) class, however, would lend greater protection to the individual class members due to the requirements of Rule 23(c)(2) and (3).

The court's earlier discussion concerning the requirements of Rule 23(a) is germane to the present question. Thus, the court will incorporate that same discussion here for purposes of the (b)(3) certification. As to the requirements of (b)(3) itself, the court notes that the legal issues concerning such questions as whether or not the defendant had a policy of racially discriminating against its black hourly laborers or craft-trainees by condoning or encouraging harassment of those persons by defendant's white employees and supervisors are common to the class. A common question of law will also arise concerning the exact nature of damages recoverable at law due to the infliction of such harassment. These questions will predominate over the disparate questions affecting the class members on an individual basis. Those disparate questions would involve a determination of the specific acts of harassment and consequent individual damages suffered by the class members. Yet, the standards by which those injuries would be measured would be the same for each person.

The result of certification will be that the fact-finder must determine whether illegal racial discrimination occurred. If that determination is made adversely to the defendant, the individual need only prove that he, as a class member, is one of the presumed discriminatees, followed by proof of the economic loss sustained by him as a result. The burden then shifts to the defendant to establish by a preponderance of the evidence, if it can, that other factors caused the occurrences of which the claimant complains. *Lucy Sledge v. J. P. Stevens & Co., Inc.*, 585 F.2d 625, 637 (4th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979).

The court further concludes that certification in this instance is a superior way of handling this litigation to a fair and efficient adjudication. The court has considered other mechanisms for expediting the suit, *e.g., Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (offensive collateral estoppel); but, it is the court's determination that none would be more advantageous than a (b)(3) class certification in this factual context.

Finally, since there is no exhaustion of administrative remedies requirement for an action under 42 U.S.C. § 1981, each of the named plaintiffs is a proper representative for the (b)(3) class. Should the court later determine that damages at law are also recoverable under Title VII, then an adjustment of the named representatives may need to be made. The court also recognizes that a determination of the proper statutes of limitations periods for the two causes of action may affect the ability of a named plaintiff to prosecute this suit and to represent the class. This adjustment will also be made at a later date should it prove necessary.

## V. Statute of Limitations

In their briefs on this class certification motion, the parties have indicated their divergent views on the proper statutes of limitations to be applied to these two classes. To this point, the court has adopted the time period advanced by the named plaintiffs. The court recognizes, however, that the exact limitations period must be determined before the class definition can be finalized. Thus, the certifications made herein will be tentative pending a final

determination of the appropriate statutory periods. A briefing schedule will be developed in a separate order.

### VI. Notice

In view of the problem remaining concerning the proper statute of limitations period, the court will defer any direction at this time for the giving of notice to the absent class members. The parties are requested, however, to commence development of their proposals for the proper notice that is to be given to the members of each certified class. The court further directs that no notice be given in the interim and that counsel for the parties and agents of counsel not initiate any class contact until otherwise ordered.

### VII. ORDER

Accordingly, it is ORDERED that the motion for class certification is conditionally granted pursuant to Rule 23(b)(2) and (3), Fed.R.Civ.P. Named plaintiffs Gerald Taylor, Michael Bush, Clayford McGhee, and Marshall Hairston shall represent the Rule 23(b)(2) class for relief under Title VII and all of the named plaintiffs shall represent the same Rule 23(b)(2) class for relief under 42 U.S.C. § 1981. All the named plaintiffs shall represent the Rule 23(b)(3) class.

It is further ORDERED that the class definition for both classes is as follows:

All black persons now employed or employed for any period of time subsequent to February 21, 1972, by the defendant's Construction Department, headquartered at Institute, West Virginia, who either were assigned to work at defendant's facilities at Institute, Alloy, or South Charleston, West Virginia, including the Technical Center, or were hired in West Virginia and assigned to work at defendant's facilities at Marietta, Ohio; *Provided that*, all such black persons were either employed as hourly unskilled laborers or as craft-trainees; and *further Provided that*, such black employees suffered racial discrimination in the form of

(1) the failure of defendant to prevent its supervisors from discriminating on a racial basis against such black employees by threats, intimidation, and assignment to onerous or unsafe duties; or,

(2) the failure of defendant to prevent its employees from engaging in racial slurs against, making physical attacks upon, or using other methods of harassment of such black employees; or,

(3) the failure of defendant to promote such black employees from hourly unskilled laborers to skilled craft positions due to racial discrimination; or,

(4) the defendant's establishment and application of disciplinary rules, policies, and procedures which in purpose and in practice discriminated against such black employees so as to bring about unfair disciplinary actions, suspensions and terminations of the employment of such black employees; or

(5) the defendant's harassment of such black employees in any or all of the above four ways in retaliation for the complaint by some black employees to state and federal equal employment agencies.

It is further ORDERED that notice shall not be given to either class until further order of the court.

It is further ORDERED that counsel for the parties and counsel's agents shall not initiate any contact with absent class members of either class until further order of the court.

The parties are directed to appear for a status conference at 1:00 p.m., on May 14, 1980.