Alonzo BONNER, Plaintiff-Appellee,
Cross-Appellant,

v.

Joseph COUGHLIN, et al., Defendants-
Appellants, Cross-Appellees.

Nos. 80–2186, 80–2187.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1981.

Decided Aug. 20, 1981.

Rehearing and Rehearing In Banc
Denied Sept. 18, 1981.

William M. Wippold, Asst. Atty. Gen., Chicago, Ill., for Joseph Coughlin et al.

Aram A. Hartunian, Pressman & Hartunian, Chicago, Ill., for Alonzo Bonner.

Before PELL, Circuit Judge, MARKEY,[*] Chief Judge, and WOOD, Circuit Judge.

PER CURIAM.

The defendants appeal from an amended order of the district court which substantially increased the amount of attorneys' fees originally granted to the plaintiff pursuant to 42 U.S.C. § 1988. Plaintiff Alonzo Bonner, a state inmate, argues that the amended award was appropriate, or alternatively, that the district judge should have awarded an even higher amount. He also contests the district court's grant of judgment notwithstanding the verdict (JNOV) to one of the defendants.

I. Background

This litigation has followed a troubled course protracted beyond that justified by the relatively pellucid underlying grievance. On November 28, 1972, after completing a work assignment, Bonner returned to his cell to discover the door ajar, his cell in complete disarray, and the transcript from his state court trial missing. The defendants admitted that two prison guards, defendants Rumley and Robinson, had conducted a "shakedown" of Bonner's cell pursuant to a prison regulation authorizing pe-

---

[*] Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

riodic surprise searches.[1]  That regulation, however, expressly prohibited damaging or confiscating an inmate's permitted personal property.

Bonner's appeal from his state court conviction was pending at the time of the search.  Although the original transcript was never returned to Bonner, he was represented by counsel who did have a copy of the transcript and the common law record.  Shortly after his murder conviction was affirmed by the Illinois Appellate Court, the plaintiff commenced a federal civil rights action seeking declaratory and injunctive relief and monetary damages for his loss.[2]  Approximately six months later, Bonner was given a substitute copy of his transcript.  On March 22, 1974, the district court granted the defendants' motion for summary judgment.  On appeal, this court, addressing the plaintiff's legal theories of recovery, ruled that Bonner had stated a claim regarding the seizure of his transcript (1) as an unreasonable search under the Fourth Amendment, and (2) as an interference with Bonner's right of access to Illinois courts under the Fourteenth Amendment.  Accordingly, the judgment was vacated and the case remanded.  This court however, held that Bonner failed to state an alternative negligence claim under 42 U.S.C. § 1983.  In the subsequent *en banc* rehearing, a majority of this court reaffirmed that no cause of action for negligence could lie under § 1983.

Bonner had alleged that prison guards seized the transcript in violation of the plaintiff's constitutional rights, or alternatively, that their negligence in leaving the cell door ajar allowed some other unauthorized individual to remove the transcript.  In the panel opinion, *Bonner I*, the court declined to decide whether mere negligence was ever cognizable under § 1983, and instead disposed of the claim by ruling that, under the circumstances of the case, "the availability of an adequate state remedy for a simple property damage claim avoids any constitutional violation."  517 F.2d at 1319 (footnote omitted).

On rehearing, *Bonner II*, this court squarely rejected Bonner's contention that the alleged negligence was actionable under § 1983.  The court additionally noted that "[i]n view of *Monroe v. Pape*, [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492] we do not hold that Section 1983 is inapplicable on the ground that plaintiff has an adequate remedy in the Illinois courts."[3]  545 F.2d at 568 n.7.

Bonner's trial on remand commenced on March 28, 1979, and lasted for two days.  The jury awarded the plaintiff $100 in compensatory damages for the loss of his transcript.

On June 21, 1979, the trial judge entered an order granting defendant Robinson a JNOV and awarding the plaintiff costs and $6,000 in attorneys' fees although Bonner had sought over $40,000.  The judge refused to apply a multiplier and determined that the issue before the *en banc* court had been resolved against the plaintiff.  He characterized this lawsuit as a "simple, one issue case" which "was not particularly

---

1.  A more fully developed exposition of the facts is contained in the court's prior panel opinion in this case, *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

2.  The defendants were Joseph Coughlin, then Acting Director of the Illinois Department of Corrections;  John Twomey, then Warden of the Illinois State Penitentiary, Joliet Branch; and W. Rumley and J. Robinson, prison guards.

3.  The Supreme Court only recently issued its opinion in *Parratt v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed. 420 (1981), which now apparently would allow a § 1983 claim based upon a negligent deprivation of property by prison guards.  At the same time, *Parratt* has adopted Justice Stevens' view, in *Bonner I*, that the existence of adequate state remedies to redress the loss may avoid a constitutional deprivation of property without due process, 49 U.S.L.W. at 4513, at least in § 1983 cases alleging negligent deprivation.  (*See esp.* Justice Blackmun's concurring opinion.)  While *Parratt* may affect § 1983 litigation generally, *Parratt* is largely irrelevant to our narrow consideration of Bonner's attorneys' fee claims in this case.  We are only concerned with the extent to which Bonner prevailed in *his* particular case.

complex" and found that the hours claimed were excessive.

The court granted the plaintiff's subsequent motion to amend the fee award, however, on July 15, 1980. The original award of $6,000 was increased to $24,985. Without explaining the motivation for his sudden change in position, the judge concluded that the plaintiff had prevailed on the issue which initiated the *en banc* rehearing, determined that the amount of time spent on the case was reasonable, and applied a multiplier to the award for hours expended at the appellate level. The record indicates that the amended award was not based on any new information submitted to the district judge other than a breakdown of the hours billed for time subsequent to remand more detailed than that originally submitted.

II. Fee Award Factors

■ In determining a fee award under § 1988, a trial court should of course consider the hours spent on the case and the billing rate requested. Various factors in setting fees have been recognized by different courts. This court has recognized as appropriate the factors set forth in the Code of Professional Responsibility adopted by the American Bar Association:[4]

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Disciplinary Rule 2–106. *Muscare v. Quinn,* 614 F.2d 577, 579 (7th Cir. 1980), quoting *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1322 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

■ Although nominal damages will justify a fee award to a prevailing plaintiff, *Skoda v. Fontani,* 646 F.2d 1193 (7th Cir. 1981) (per curiam); *Coop v. City of South Bend,* 635 F.2d 652, 654 (7th Cir. 1980), the nominal nature of the damages is a factor to be considered in determining the amount of the award. *Perez v. University of Puerto Rico,* 600 F.2d 1, 2 (1st Cir. 1979).[5] The purpose of the Attorney's Fees Awards Act is to encourage private enforcement of civil rights acts by awarding reasonable fees to prevailing parties, S.Rep.No.94–1011, 94th Cong., 2d Sess. 1, 2 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5910, for all time reasonably expended. *Id.* at 5913. The amount recovered may sometimes indicate the reasonableness of the time spent to vindicate the right violated. *Scott v. Bradley,* 455 F.Supp. 672, 675 (E.D. Va.1978).

■ In determining a fee award, the court should consider the number of hours ordinarily necessary competently to prepare comparable cases. *Brown v. Bathke,* 588 F.2d 634, 638 (8th Cir. 1978). *See, e. g., Gagne v. Maher,* 594 F.2d 336, 345 (2d Cir. 1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (trial court did not commit error by disallowing half the hours worked where the issues were relatively simple and most attorneys would not have

---

4. The district court need not address each factor specifically, nor is the list necessarily inclusive for all cases. *Coop v. City of South Bend,* 635 F.2d 652, 655 (7th Cir. 1980).

5. We agree with the First Circuit in *Perez,* however, that a nominal damage award does

not permit a nominal attorneys' fee award because "that would undercut congressional policy and handicap those seeking to assert civil rights to the same extent as denying fees altogether." 600 F.2d at 2 n.2.

spent as much time on the case); *Cole v. Tuttle*, 462 F.Supp. 1016, 1020 (N.D.Miss. 1978) (court regarded counsel's request for more than 200 hours for trial and pretrial work on a one-day trial as excessive, noting that reasonable preparation should not have exceeded 100 hours). Fee awards based upon an excessive number of hours would encourage overpreparation of often relatively simple cases:

> [W]hen a lawyer is working for his own client he sensibly limits his research and preparation in proportion to the magnitude of the results sought by his client and his client's perceived ability and willingness to pay. No such constraints work on a civil rights plaintiff's counsel. Indeed, the temptation is just the opposite. Since "the enemy" will be paying anyway, counsel is induced to read *every* case, depose *every* witness, examine fully *every* tactic, leave *no* stone unturned....

*Scott v. Bradley*, 455 F.Supp. at 675. As this court has recognized, the interest in promoting the redress of civil rights violations by awarding fees under the Act does not include the creation of "a civil rights fee bank to be liberally drawn upon by lawyers for their own welfare." *Coop*, 635 F.2d at 655.

■ In the instant case, the judge allowed compensation for 253.5 hours of discovery, pretrial, and trial work for a two-day trial.[6] He found that the preparation was done efficiently and without any duplication of effort although in denying a multiplier to the trial work, he recognized that "after the Seventh Circuit's rulings there were no difficult legal issues to be resolved ... and the factual issues were relatively simple." A year earlier, with the trial undoubtedly fresher in his mind, the same judge had characterized this as "a simple, one issue case." He there acknowledged that damages recovered are often an indica-

tor of the worth of the case, and noted that plaintiff's counsel "never seriously argued for anything but nominal damages.... [W]e do not belittle Mr. Bonner's feeling of vindication of his individual rights. But this Court seriously doubts that the verdict rendered in his case will have any far-reaching effect in the furtherance of prisoners' rights in general."

We agree with the district court that once the theories of recovery upon which the plaintiff could state a claim were resolved at the appellate level, the legal issues at the two-day trial were relatively clear and the factual issues were not complex. We cannot ascertain any basis for the trial judge's departure from his apparently correct original position that time spent on the case, particularly at the trial phase, was excessive. Nor from this court's exposure to *Bonner* are we able to put forth any justification for the expenditure of the claimed amount of time.

### III. The *En Banc* Rehearing

■ Fee awards for appellate work are generally appropriate where the plaintiff has prevailed in the case. *Bond v. Stanton*, 630 F.2d 1231, 1234–35 (7th Cir. 1980). Whether or not a party has prevailed for purposes of the Act depends upon a consideration of the circumstances of each case. *Dawson v. Pastrick*, 600 F.2d 70, 79 n.13 (7th Cir. 1979). The defendants do not question Bonner's status as a prevailing party in the panel hearing, but they contend that Bonner did not prevail at the rehearing.

■ This is an unusual case in that, at the plaintiff's request, this court conducted an *en banc* rehearing to consider the only claim decided adversely to Bonner in the panel opinion: whether the facts stated a cause of action under 42 U.S.C. § 1983. The *en banc* court affirmed the panel's determi-

---

**6.** Attorneys' fees are not sought for time spent at the district court level prior to appeal. Bonner originally commenced his action *in forma pauperis*. The district court appointed an employee of the Mandel Legal Aid Clinic to represent him. When summary judgment was rendered in favor of the defendants, however, the plaintiff was referred to the attorney who subsequently represented him on appeal and remand. In addition to trial and pretrial compensation, the plaintiff claims 121.5 hours of appellate work, 72.5 of which were spent in preparation for this court's rehearing *en banc*.

nation, although on different grounds, that the plaintiff could not maintain a § 1983 action. Although the district court originally held that the issue before the court on rehearing was resolved against the plaintiff, the amended opinion reasoned that even though Bonner did not ultimately prevail upon the negligence claim, he did "prevail" on the issue which initiated the rehearing, i. e., whether the availability of a state remedy precluded the plaintiff's suit. This would seem to stretch the ordinary meaning of prevail. Losing on a different ground than last time would scarcely improve the standing of a baseball team and it is difficult to see how Bonner achieved any sort of victory here.

Even though *Bonner* II held that negligence does not state a cause of action under § 1983, Bonner insists that he prevailed at the rehearing [7] by virtue of the court's one-sentence footnote that, under *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), "we do not hold that Section 1983 is inapplicable on the ground that plaintiff has an adequate remedy in the Illinois courts." *Bonner v. Coughlin*, 545 F.2d 565, 568 n.7 (7th Cir. 1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). We do not agree that the plaintiff prevailed at the rehearing. He clearly lost on the major issue before the *en banc* court and was unable to maintain his claim on a § 1983 theory.

IV. Awarding a Multiplier

In *Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598, 604 (7th Cir. 1979) (Title VII), this court implicitly approved the use of multipliers in appropriate cases, but reduced the multiplier originally awarded by the district court from 50% to 25%. The district court had stressed the commendable quality of representation and the contingent nature of the fee as factors justifying a multiplier. In reducing the multiplier, however, this court applied the Code of Professional Responsibility factors, and recognized that while the factual issues were complex, the legal issues were relatively simple. Additionally, the court noted that the attorneys were not precluded from accepting other employment, and they had not operated under time limitations. *Id.*

The case at bar is not an appropriate case for the use of a multiplier. The contingent nature of the fee is an appropriate factor to weigh in determining the overall reasonableness of the fee, but it alone does not justify the use of a multiplier. Plaintiff's counsel was skilled in prison rights litigation, but the result obtained, a $100 judgment, was fairly minimal, and in the words of plaintiff's counsel the judgment represented "a fair amount for the injuries sustained by the plaintiff." We do not doubt that counsel's representation was competent and vigorous. We have nonetheless expressed some doubt as to the reasonableness of the number of hours claimed, particularly in light of counsel's own assessment of the nature of plaintiff's injury and the nominal judgment. Moreover, to the extent that the legal issues in the case were complex, the factual issues were straightforward.

In its amended opinion, the district court found that plaintiff's counsels' performance contributed to producing law of significant precedential value. In light of *Parratt, see* n.3, *supra*, the precedential value is questionable. Moreover, in its first opinion, the district court had initially found that because no discriminatory or other evil motive

---

7. Initially, the plaintiff argues that this court's order of January 27, 1977, in this case precludes reconsideration of the propriety of awarding attorneys' fees for time spent on the rehearing. That order provided that compensation for appellate work would be included in the district court's fee allowance should the plaintiff ultimately recover a judgment. That order, however, did not determine the precise issue of which party had prevailed at the rehearing *en banc* aspect of the appellate proceedings. It only directed that any consideration of attorneys' fees for appellate work be postponed until the plaintiff ultimately prevailed at the trial level. Additionally, we find no merit in the plaintiff's argument that the defendants waived the right to contest this aspect of the trial court's award because they failed to oppose compensation for *all* appellate work when the plaintiff filed his motion for interim costs on appeal five years ago.

had been established, but only overzealousness on the part of prison guards in a single isolated instance, "this Court seriously doubts that the verdict rendered in this case will have any far-reaching effect in the furtherance of prisoners' rights in general." While the court also based its decision to award a multiplier upon the "undesirability" of the case, we note the defendants' argument that a prisoner's rights case may not, in fact, be undesirable to a lawyer experienced in the field who frequently undertakes such cases. Finally, as in *Kamberos*, there is no evidence that the prosecution of this case precluded other employment.

The plaintiff argues that the delay in payment between the time legal services were rendered (as early as 1974), and the time the fees actually will be recovered, justifies a multiplier. Although delay in payment has been recognized as a factor in determining fee awards in *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980) (en banc), and *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976), the court in *Copeland* was careful to note that if the fee award was based upon prevailing hourly rates, as opposed to those in effect at the time services were rendered, any harm resulting from the delay would be greatly diminished or altogether eliminated. 641 F.2d at 893 n.23. We therefore would not consider delay in payment to be a factor assuming that the court on remand computes the fee at current rates prevailing in the locality. This would seem particularly true in the present situation in which the judgment, payment of which was delayed, involved not very much more than the traditional farthing.

V.   Fee Distinctions by Type of Work Performed

■ The defendants argue that the district court should not have compensated plaintiff's counsel at a uniform rate for all hours spent, but should have assessed lower rates for out-of-court time. In *Miller v. Carson*, 563 F.2d 741, 756 (5th Cir. 1977), the court ruled that the trial judge's award setting separate fees for in-court and out-of-court time was not an abuse of discretion. But this does not require a trial court to compute a reasonable fee by that method. Reasonable fees may also be established by charging a modest flat rate for all hours which rate, of course, would be less than the maximum in-court hourly charge. *See, e. g., Arnett v. American National Red Cross*, No. 76–1083 (D.D.C. January 28, 1980), slip op. at 11. Computing the fee in this manner does not constitute an abuse of discretion.

VI.   Interest on the Judgment

■ The plaintiff additionally contests the district court's assessment of 6% interest on the $100 verdict accruing from March 30, 1979. All parties agree that 28 U.S.C. § 1961 directs that interest on judgments in civil cases be calculated according to the rate allowed under state law. The plaintiff does not question that state prison guards are entitled to indemnity from the state for a judgment rendered against them in an action alleging deprivation of civil or constitutional rights arising out of any act occurring within the scope of employment as long as the guards were not found to have acted intentionally or willfully. Ill.Rev. Stat. ch. 127, §§ 1301–02. The plaintiff contends that although Ill.Rev.Stat. ch. 74, § 3 provides that only 6% interest is to be assessed where the judgment debtor is a governmental entity, the statutory rate of 9% [8] applies because the judgment was actually rendered against the guard, not the state. The district court, however, appropriately awarded only 6% since the state, in reality, will actually pay the judgment.[9]

---

8.  The court assumes that the plaintiff requested a rate of 8% by mistake since the statute to which he refers, Ill.Rev.Stat. ch. 74, § 3, stipulates that a 9% rate is appropriate on judgments assessed against nongovernmental entities.

9.  In fact, the court ordered the Department of Corrections to pay the judgment and interest thereon in addition to attorneys' fees and costs. That portion of the court's order directing the Department to pay the judgment was not contested on appeal.

■ Statutes must be construed together, and applied in a consistent fashion where possible. The legislature drew a distinction between state and private coffers for a purpose. If, as we assume, the legislature was seeking to soften the impact of judgments on the state treasury by enacting the lower interest rate for governmental debtors, it would be illogical to imply an exception to that policy in the absence of express legislative authority.

## VII. The Judgment Notwithstanding the Verdict

The jury rendered a $100 judgment against both prison guards Rumley and Robinson. The trial court, however, granted the defendants' motion for a JNOV in favor of Robinson, but denied the motion as to Rumley. The court reasoned that there was some evidence that Rumley had taken the plaintiff's transcript, but no evidence that Robinson had acted in concert with Rumley. The judge held that the defendants' failure to renew their earlier motion for a directed verdict at the close of all the evidence did not preclude his consideration of the JNOV motion.

On appeal, the plaintiff contests the JNOV solely on the basis that Fed.R.Civ.P. 50(b) precludes a district court from granting a JNOV to a party who has failed to move for a directed verdict at the close of *all* the evidence.

Where a defendant makes a motion for a directed verdict prior to the conclusion of the case, but fails to renew the motion at the close of all the evidence, that party's right to move for a JNOV has traditionally been considered waived, although some cases have relaxed the rigidity of the rule under certain circumstances. 5A Moore's Federal Practice ¶ 50.08, at pp. 50–89 to –90 (2d ed. 1980). While some courts adhere rigidly to the letter of the rule, *see, e. g., DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1195–96 n.4 (3d Cir. 1978) (ruling on defendant's JNOV motion precluded even though it had moved for a directed verdict at the close of the plaintiff's case, and had handed a written motion

for directed verdict to the judge's law clerk at the close of all the evidence, because written motion had not come to the judge's attention before the case was submitted to the jury), this and other circuits have applied a more liberal approach. In *Bachtel v. Mammoth Bulk Carriers, Ltd.,* 605 F.2d 438, 441–42 (9th Cir. 1979), *overruled on other grounds, Brown v. American Mail Line, Ltd.,* 625 F.2d 221 (9th Cir. 1980), the Ninth Circuit expressly rejected the strict approach of *DeMarines v. KLM,* and ruled that the defendant's motion for directed verdict and request for jury instruction to return a verdict in defendant's favor made at the close of the plaintiff's case "placed the issue of the sufficiency of the evidence directly before the court. Consequently, the court had jurisdiction to pass on the sufficiency of the evidence under the Rule 50(b) motion even though there was no motion for a directed verdict as required by the rule." *Id.* at 441–42. Similarly, in the case at bar, the defendants presented a motion for a directed verdict at the close of the plaintiff's case upon which the trial court reserved ruling.

■ This circuit has also advocated a flexible approach. In *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 576–77 (7th Cir. 1976), the trial court had denied the defendant's motion for a directed verdict at the close of the plaintiff's evidence. The defendant's failure to renew its motion at the conclusion of all the evidence was not fatal where the trial court, in response to plaintiff's motion for directed verdict at the close of the evidence, had indicated that the court had previously denied the defendant's motion for directed verdict and " '[t]he situation hasn't changed any since that time.' " *Id.* at 577. After denying the plaintiff's motion, a short colloquy occurred wherein the defendant sought a jury instruction which, the appellate court found, all participants had effectively recognized as a motion for a directed verdict. Subsequently, in *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 585 F.2d 821, 825 (7th Cir. 1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), the court exam-

ined the purposes behind Rule 50 and concluded that there was no waiver of the motion for JNOV where the defendant made a motion for a directed verdict after both parties had rested their cases in chief, but before some rebuttal evidence was introduced. Although these cases appear to be factually distinguishable from the present case, they represent this circuit's rejection of a rigid interpretation of the requirements of Rule 50(b). It is certainly the better and safer practice to renew the motion for directed verdict at the close of all the evidence, but "[t]he application of Rule 50(b) in any case 'should be examined in the light of the accomplishment of [its] particular purpose as well as in the general context of securing a fair trial for all concerned in the quest for truth.'" *Ohio-Sealy Mattress*, 585 F.2d at 825, quoting *Pittsburgh-Des Moines*, 532 F.2d at 576.

In the instant case, as in *Bachtel v. Mammoth Bulk Carriers, supra*, the defendants did move for a directed verdict at the close of the plaintiff's case. Moreover, the trial judge reserved ruling on that motion. On the limited record before this court, we cannot tell what else may have transpired in court with reference to this issue as we did in *Ohio-Sealy Mattress*, and *Pittsburgh-Des Moines*. The plaintiff acknowledges that he did not order preparation and transmittal of the trial transcript in this case because "[w]hile a transcript would be useful to support plaintiff's claim that the district court erred in granting judgment n. o. v. to defendant Robinson, preparation of the transcript would be an extravagant expense when the amount involved is one hundred dollars, and where there are good grounds to challenge the grant of judgment n. o. v. without the transcript." Plaintiff's assumption that the waiver issue can be reviewed without a transcript is, however, erroneous. On the limited record before this court, we cannot tell whether or not the circumstances of this case would permit technical noncompliance with the rule under the prior cases discussed. Thus, the appellant has failed to carry his burden of establishing the error he claims, and we therefore cannot say that the trial court's grant of JNOV to defendant Robinson was erroneous. *See Ries v. Lynskey*, 452 F.2d 172, 178 (7th Cir. 1971) ("It is important, if not essential, to the reviewing court that an appellant under Rule 10, Fed.R.App.P., bring before this court all parts of the proceedings below necessary for a determination of the validity of any claimed error."); *Springer v. Best*, 264 F.2d 24, 29 (9th Cir. 1959) (Where appellant's failure to provide a transcript rendered it impossible to determine if proper foundation for admission of a photostatic copy had been established at trial, the court ruled against him because "[f]rom the record before us we have no way of determining the question. . . . The burden is on appellant to establish error. . . .").

For the foregoing reasons, the judgment of the district court regarding attorneys' fees is vacated and the case is remanded, Circuit Rule 18 to be applicable, for further proceedings in accordance with the guidelines expressed herein; the judgment granting the motion for JNOV in favor of defendant Robinson and the court's award of 6% interest on the $100 judgment are affirmed. The parties will bear their own costs on this appeal.