Constance KAMBEROS,
Plaintiff-Appellee,

v.

GTE AUTOMATIC ELECTRIC, INC.,
Defendant-Appellant.

No. 79–1185.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1979.

Decided July 16, 1979.

Gerald D. Skoning, Chicago, Ill., for defendant-appellant.

Peter B. Carey, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, PELL and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

This is a suit for damages and injunctive relief brought under the provisions of the Equal Opportunity and Employment Act, 42 U.S.C. §§ 2000e *et seq.* Plaintiff Constance Kamberos alleged that defendant GTE Automatic Electric, Inc. ("GTE") had engaged in discriminatory hiring practices based on sex. After a bench trial, the district court found against defendant on the issue of liability. Plaintiff was granted relief:

(1) Defendant was ordered to pay plaintiff $119,117.20 in backpay covering the period from March 3, 1969 to July 31, 1978.

(2) Defendant was mandatorily enjoined to employ plaintiff as a corporate attorney when the first vacancy occurs in that position.

(3) Defendant was ordered to pay plaintiff $16,000.00 per annum front pay until defendant offers plaintiff a position as corporate attorney.

(4) Defendant was ordered to pay $26,015.00 in attorney fees.

*Kamberos v. GTE Automatic Elec., Inc.,* No. 74 C 151 (N.D.Ill. Aug. 10, 1978).

The defendant appeals from the finding of liability, the appropriateness and computation of the backpay award, the hiring injunction, and the amount of attorney's fees awarded. We affirm the district court's finding of liability, but reverse on the appropriateness of the hiring injunction and the computation of the awards of backpay and attorney's fees.

This controversy began over ten years ago in March 1969. At that time Kamberos, a graduate of the DePaul University Law School in Chicago, was unemployed and registered with the Illinois State Employment Service. GTE was seeking a corporate attorney to fill a position opened by a resignation in June 1968. In August 1968 William McGuire, vice-president of GTE's operation in Northlake, wrote to the deans of the law schools at DePaul, Northwestern and Loyola Universities, and the placement service of the Chicago Bar Association. McGuire's letter indicated that GTE was seeking an associate general attorney:

> We would require a man with a real interest in this kind of work and a record of excellent scholarship, with qualities of initiative and imagination, to work in a broad field of corporate legal activity, except trial work. While we would like to have a man who has two or three years actual experience, either in a law firm or corporation, we would consider candidates with less or more qualifications than these.

> \* \* \*

> I can assure you that this is a challenging and worthwhile opportunity for the right man. (Plaintiff's Exhibit 35.)

When efforts to find the "right man" did not produce a candidate, GTE advertised in the *Wall Street Journal* on March 3, 1969. The advertisement read in pertinent part:

> Automatic Electric Company, the largest manufacturer and supplier in the

United States of telephone equipment for the independent telephone industry, has an exceptional opportunity in its law department for an attorney with three to five years' experience.

> The position involves legal work concerning all areas of the company's activities.

> A high academic record and experience in a private law firm or corporate law department is desired.

> The salary is competitive and will be based upon the individual's experience and achievement.

> Please forward resume and salary requirements, which will be treated in confidence, to:

> Bruce Bullock
> Professional Employment
> AUTOMATIC ELECTRIC
> A Member Of The GT & E Family Of Companies
> 400 North Wolf Road, Northlake, Illinois
> An Equal Opportunity Employer.

(Plaintiff's Exhibit 18.)

The day the advertisement appeared, Kamberos was meeting with Carmen Matello, a counselor with the Illinois State Employment Service. Matello asked Kamberos if she was interested in GTE's offer and she responded affirmatively. Matello telephoned Bruce Bullock at defendant's offices and stated that he had an attorney with him who met the qualifications described in the advertisement.[1] Matello read Kamberos' resume to Bullock. Kamberos was seated next to Matello and could overhear the conversation. She testified that when Matello finished reading her resume, Bullock responded, "That's exactly the background we're looking for." Bullock and Matello then arranged for an interview that afternoon. Bullock requested the name of the lawyer and when Matello complied, Bullock asked, "Is it a woman?" Matello responded, "Yes." Bullock then stated that

1. Bullock, to whom the advertisement directed inquiries, had been an employment recruiter for a number of years and for at least one year had engaged in professional recruiting. Bullock and his colleagues had been responsible for processing thousands of applications for jobs at GTE.

Kamberos satisfied the qualifications. She was a graduate of an accredited law school and had more than five years of experience in corporate and private law offices.

GTE was not interested in hiring a woman: "they were looking for a man." In response, Matello stated, "She has all of the qualifications." Bullock replied that he would not hire her because the job involved working more than eight hours a day.[2] When Matello slated that the Eight-Hour Law did not apply to professionals, Bullock's response was, "We are not interested in a woman."

Kamberos then spoke directly to Bullock on the telephone. Bullock again stated that the Eight-Hour Law precluded her from being considered for the position. At that point, Kamberos reiterated Matello's statement that the law did not apply to professionals. According to plaintiff, Bullock then ". . . kind of laughed" and said ". . . they would not hire a woman for this job."

Kamberos filed a charge with the Equal Employment Opportunity Commission ("EEOC") that same day. On March 27, 1969 an EEOC investigator met with M. A. Edelman, defendant's director of personnel, and served Kamberos' complaint upon defendant. The following day Edelman prepared a letter to Kamberos, apologizing for the misunderstanding and asking her to submit a resume. Edelman wrote to the EEOC on April 2 attaching a copy of his letter to Kamberos and reaffirming GTE's position that the incident was caused by a misunderstanding of the Eight-Hour Law. Kamberos testified that she never received the letter and that the first time she saw the letter was in 1973 when she asked the EEOC to attempt to conciliate her dispute with GTE.

Neither the EEOC nor Kamberos took any action on her complaint for over four years.[3] On January 3, 1974 the EEOC issued a "right to sue" letter and plaintiff filed her complaint in the Northern District of Illinois on January 18, 1974.

## I

█ The appropriate legal standard outlining the burden of proof which a Title VII plaintiff must meet was established by the Supreme Court in *McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Furnco Construction Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Board of Trustees of the Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that [s]he belongs to [that sex discriminated against]; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite h[er] qualifications, [s]he was rejected; and (iv) that, after h[er] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnel, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. "The burden must then shift to the ⁊ployer to articulate some legitimate, nondiscriminatory reason for the employer's rejection [of the plaintiff]." *Id.* If the employer does offer some legitimate reason for the rejection, the plaintiff must then be "afforded a fair opportunity to show that [the employer's] stated reason for [the plaintiff's] rejection was in fact pretext." *Id.* at 804, 93 S.Ct. at 1825.

█ Examining the evidence in light of these standards, Kamberos satisfied the requirements for a *prima facie* showing of

---

2. "An Act Concerning the Hours of Employment of Females in Certain Occupations," Ill. Rev.Stat. ch. 48 §§ 5 *et seq.,* ("Eight-Hour Law") prevented women from working more than an eight-hour day. The law was amended prior to these events to exclude professionals from the restrictions.

3. The history of the action in the district court is almost as distressing as the EEOC delay. The case was assigned to three different judges before being heard by Judge Marshall over three years after the complaint had been filed in the district court.

sexual discrimination.[4] The district court found that she was a woman qualified for the position of corporate attorney with GTE, that she was rejected by GTE, and that the position was subsequently filled by a male. GTE's articulated, non-discriminatory reason for its action was that Bullock's refusal to hire Kamberos was an innocently mistaken application of the Eight-Hour Law. In determining that GTE's stated reason was pretextual, the district court correctly applied the *McDonnel* standard. In reviewing the district court's decision, we are bound to accept its findings of fact unless they are clearly erroneous. *Stewart v. General Motors Corp.,* 542 F.2d 445, 449 (7th Cir. 1976), *cert. denied,* 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977). The district court's finding that GTE's stated reason was pretextual is supported by the evidence. It is unlikely that Bullock was unaware of the amendment to the Eight-Hour Law which had occurred two years earlier considering the large volume of professional applications he handled. Furthermore, Bullock ignored Matello's and Kamberos' protestations that the law did not apply. The argument of a mistaken interpretation of the Eight-Hour Law can be seen only as pretextual in these circumstances. The district court's conclusion that GTE's justification for rejecting Kamberos was pretextual and that GTE discriminated against Kamberos because of her sex must be affirmed.

## II

■ The purpose of 42 U.S.C. §§ 2000e *et seq.* is to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). "It follows that given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes." *Id.* at 421, 95 S.Ct. at 2373. GTE, relying on *Taylor v. Phillips Industries, Inc.,* 593 F.2d 783 (7th Cir. 1979), argues that "before the court may award damages, plaintiff must first establish that she has, in fact, sustained an economic loss from defendant's discrimination." *Id.* at 786–87.[5] GTE contends that in order for Kamberos to be eligible for backpay she must prove that she would have been hired, as this would be the only way she could establish an actual economic loss. Defendant, in effect, is attempting to reargue the liability issue. The *McDonnel* decision demonstrates that plaintiff's burden is met when she shows that she was qualified, not that she would have been hired.

■ The *Taylor* decision, relied on by GTE, applies only when a plaintiff fails to show that her post-discrimination earnings were less than her earnings would have been had she been hired. *See* 42 U.S.C. § 2000e–5(g). Thus, the plaintiff in *Taylor* failed to establish an economic loss. Kamberos has established her damages by measuring the difference between her actual earnings and those which she would have earned absent the discrimination of defendant. *Kamberos v. GTE Automatic Elec., Inc.,* No. 74 C 151, slip op. at 23 (N.D.Ill., Aug. 10, 1978). *See Waters v. Wisconsin Steel Workers of International Harvester Co.,* 502 F.2d 1309 (7th Cir. 1974), *cert.*

---

4. Although Kamberos never technically applied for the job at GTE, the district court held that the telephone call between Matello/Kamberos and Bullock constituted an application or, alternatively, a technical application is not necessary when defendant's conduct effectively prevented plaintiff from applying. We agree.

5. GTE also argues that Kamberos is not eligible for backpay because she was not the best qualified applicant for the position. *Rogers v. EEOC,* 179 U.S.App.D.C. 270, 271, 551 F.2d 456, 457 (1977). This rule only applies, however, when competing applicants are considered contemporaneously and the discrimination was only a factor in rejecting the plaintiff. In this case Thomas A. Chilcott, who eventually filled the position and whom GTE argues is better qualified than Kamberos, had not yet applied when Kamberos was rejected. Thus her gender was the *only* reason for her rejection.

*denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1975).[6]

■ The court did overlook one factor in computing the amount of backpay. Regulations passed pursuant to 42 U.S.C. §§ 2000e *et seq.* provide that an aggrieved party may request a right to sue letter any time after 180 days following the filing of a charge with the EEOC.[7] 29 C.F.R. § 1601.-28 (1978). In *Lynn v. Western Gillette, Inc.,* 564 F.2d 1282, 1287 (9th Cir. 1977), the Ninth Circuit stated that the "complainant should not be permitted to prejudice the employer by taking advantage of the [EEOC's] slowness in processing claims, . . . [p]articularly where the aggrieved party has consulted counsel and is aware of this right." In this case Kamberos not only retained counsel but is a lawyer herself. Nevertheless, she permitted her complaint to lie dormant with the EEOC for over four years, despite the fact that EEOC regulations provide for the automatic issuance of the right to sue letter upon request of the complainant any time 180 days after the filing of the complaint with the EEOC. Under these circumstances the district court should have subtracted from the end of the backpay period an amount of time equivalent to the time between the expiration of the 180 day period and the date when the right to sue letter was actually received by the plaintiff. On remand the court should subtract the period from February 24, 1974 to July 31, 1978 from the backpay award.[8]

## III

■ A hiring order is not appropriate unless the person discriminated against is presently qualified to assume the position sought. *Franks v. Bowman Transportation Co., Inc.,* 424 U.S. 747, 772 n. 31, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Because Kamberos is no longer qualified to assume the position of corporate attorney with GTE, the hiring order must be vacated. Kamberos has not been employed as an attorney since 1973 and has not had any significant corporate law experience since 1960. The field of corporate law is not static and has changed significantly since 1960. A determination of whether injunctive relief is appropriate hinges on a balance of the various equities between the parties and the result must be consistent with the purposes of Title VII and the "fundamental concepts of fairness." *Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir. 1974). Guided by this standard, we believe the injunctive relief granted below was inappropriate. The award of front pay in the instant case was a contingency of the hiring order and must be vacated with the injunction.

## IV

■ The proper method of determining the amount of attorney fees to be awarded in a Title VII action was set out by this court in *Waters v. Wisconsin Steel Workers of International Harvester Co., supra,* 502 F.2d at 1309. The most convenient starting point is hours worked times billing rate and other elements to be considered are set out

---

**6.** GTE also argues that it would be highly speculative to credit Kamberos with the salary increases actually earned by Chilcott in determining what she would have earned. The short answer is that "uncertaint[y] in determining what an employee would have earned . . . should be resolved against the discriminating employer." *United States v. United States Steel Corp.,* 520 F.2d 1043, 1050 (5th Cir. 1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

**7.** 29 C.F.R. § 1601.28(a) reads:

Notice of right to sue: Procedure and authority

Issuance of notice of right to sue upon requests (1) when a person claiming to be aggrieved requests in writing, that a notice of right to sue be issued . . . the Commission shall promptly issue such notice . . . at any time after the expiration of one hundred eighty (180) days after the filing of the charge.

**8.** The complaint with the EEOC was filed March 3, 1969. August 30 is 180 days after March 3 and January 3, 1974 is the day the right to sue letter was actually received by Kamberos. The period from February 24, 1974 to July 31, 1978 is equivalent to the period from August 30, 1969 to January 3, 1974.

in the Code of Professional Responsibility as adopted by the American Bar Association.[9]

 In this case plaintiff's attorney and his associates were compensated by the district court at a rate fifty percent in excess of their normal hourly rates. In awarding this premium, the district court recognized the contingent nature of the fees and noted that counsels' representation had been efficient and vigorous. Applying the factors outlined in Disciplinary Rule 2–106, ABA Code of Professional Responsibility as required by *Waters, supra,* 502 F.2d 1309, however leads us to the conclusion that the award of attorney fees is excessive.

Plaintiff's counsel spent 268.04 hours on this case, but this time was spread out over a six-year period. Although the factual issues were complex, the legal issues were "relatively simple and few." *See Beazer v. New York Transit Authority,* 558 F.2d 97 (2d Cir. 1977), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). The district court did not find that Kamberos' attorneys were precluded from accepting other employment, nor were they operating under time limitations. Further, the award of backpay will be reduced and the hiring injunction vacated on remand; thus, the "results" obtained by the attorneys are less than the results upon which the district court originally determined the appropriate fees.

Although the district court found that counsels' representation was commendable and the fees contingent in nature, these two factors alone do not warrant an award fifty percent in excess of normal hourly rates.

We consider a rate of twenty-five percent in excess of normal charges to be proper under the circumstances of this case.

Accordingly, the district court's decision is affirmed in part and reversed in part. The cause is remanded with directions to modify the remedy consistent with this opinion.

---

9. As suggested in the Code of Professional Responsibility:

Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent. Disciplinary Rule 2–106.