Henry PRESTON, et al., Plaintiffs,

v.

James THOMPSON, et al., Defendants.

PRISONERS OF PONTIAC, et al., Plaintiffs,

v.

James THOMPSON, et al., Defendants.

Nos. 78 C 3512, 78 C 3006.

United States District Court, N.D. Illinois, E.D.

March 29, 1983.

G. Flint Taylor, Jr., Chicago, Ill., Jan Susler, Carbondale, Ill., David Thomas, Shelley Bannister, Chicago, Ill., for plaintiffs.

Patricia J. Bornor, Legal Counsel, Illinois Dept. of Corrections, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

**PRENTICE H. MARSHALL,** District Judge.

We are asked in the present cases to award plaintiffs attorney's fees in connection with defendants' unsuccessful appeal of the trial court's award of attorney's fees and plaintiffs' attempts in this court to collect those fees and interest thereon. Plaintiffs have filed detailed affidavits and time records in support of their position.

Judge John Powers Crowley awarded plaintiffs $101,000 in attorney's fees under 42 U.S.C. § 1988 (1976 & Supp. IV 1980) for prevailing in *Preston v. Thompson,* No. 78 C 3512 (N.D.Ill.) and *Prisoners of Pontiac v. Thompson,* No. 78 C 3006 (N.D.Ill.). *See Preston v. Thompson,* No. 78 C 3512 (N.D. Ill. June 30, 1981). Defendants appealed and plaintiffs cross-appealed, seeking an enhancement of the award. The court of appeals, in an unpublished order, affirmed the district court's award in all respects. *Preston v. Thompson,* 681 F.2d 821 (7th Cir.1982) (*"Preston II"*). Subsequently, plaintiffs filed a motion in the court of appeals for an award of attorney's fees on appeal or in the alternative for remand to determine such fees. In another unpublished order, the court of appeals remanded the question for disposition here. *Preston v. Thompson,* Nos. 81–2237 & 81–2360 (7th Cir. July 21, 1982) (*"Preston III"*). However, in its opinion the court of appeals noted two considerations which it felt we should consider the question on remand. The first of these considerations was the length of plaintiffs-appellees' initial brief on appeal.[1] Plaintiffs' brief ran to 79 pages, some 29 pages over the limit contained in Fed.R.App.P. 28(g) and some 54 pages in excess of the length of defendants-appellants' opening brief. The brief included a 45 page statement of facts. The court of appeals stated that it "regard[ed] plaintiffs' principal brief as *prima facie* evidence that the amount of time plaintiffs' attorneys expended on this appeal exceeded the reasonable limits of compensable time." *Preston III,* slip op. at 3. The court suggested that the issues raised in the appeals "were quite straightforward" and that the brief was "disproportionate" to plaintiffs' twofold task of showing that the district court's findings of fact were not clearly erroneous and that the award was not an abuse of the district court's discretion. *Id.*

The second consideration noted by the court of appeals was that plaintiffs' cross-

---

**1.** Circuit rule 35(b)(2)(iv) states that an unpublished order shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel, or law of the case. As the court of appeals noted in its opinion, standard practice is for the district court to make the initial determination regarding attorney's fees on appeal, because of the factual findings needed to make that determination. *Preston III,* slip op. at 2. Thus, to the extent that the issue was not ruled upon by the court of appeals, its statements on the subject were *dicta.* We would be remiss, however, were we to rule on the pending motion without taking the court's statements into account.

appeal was "wholly lacking in merit." *Id.* The court characterized this as "an attempt by plaintiffs' *lawyers* to obtain an entirely unwarranted enhancement of their own fees [that] unnecessarily multiplied the costs and complexities of this litigation." *Id.* at 3–4 (emphasis in original). The court concluded that the conduct of plaintiffs' attorneys may constitute an appropriate basis for reducing the fee award regarding the appeal or denying it altogether. *Id.* at 4 (citing *Muscare v. Quinn,* 680 F.2d 42 (7th Cir.1982)).

In the instant motion, plaintiffs have requested fees for five phases of this litigation that followed Judge Crowley's award of attorney's fees: litigation in the district court over the questions whether the award should be stayed pending appeal and if so, whether defendants should be required to post a bond; the appeal itself; certain post-appeal work in the court of appeals, including a motion to amend the court's May 24, 1982 opinion, and the motion for fees on appeal; litigation in the district court concerning the collection of the fees award and interest thereon; and the present motion. Because the bulk of the compensable time claimed relates to the appeal itself, we will consider that question first.

■ It is settled law in this circuit that time spent litigating and establishing an entitlement to attorney's fees is itself compensable under § 1988. *Bond v. Stanton,* 630 F.2d 1231 (7th Cir.1980). " 'It would be inconsistent with the purpose of [§ 1988] to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.' " *Id.* at 1235 (quoting *Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978)). Denying compensation for time spent obtaining fees would result in forcing attorneys into extensive litigation in order to gain any fees, effectively reducing any eventual award. *Bond,* 630 F.2d at 1235. This would encourage defendants in cases in which fees were available to " 'dissipate the incentive provided by an award through recalcitrance and automatic appeals.' " *Gagne v. Maher,* 594 F.2d 336, 344

(2d Cir.1979) (quoting *Souza v. Southworth,* 564 F.2d 609, 614 (1st Cir.1977)), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

In addition, time expended on appeal is compensable under § 1988. *See Muscare v. Quinn,* 680 F.2d 42, 45 (7th Cir.1982) ("*Muscare III*"); *Bond,* 630 F.2d at 1234–35; *Bonner v. Coughlin,* 657 F.2d 931, 935 (7th Cir.1981). The factors to be applied in determining the reasonableness of a fee for time spent on appeal are the same as those applied at the trial level. *See Hampton v. Hanrahan,* 600 F.2d 600, 643 (7th Cir.1979), *rev'd on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). These factors include:

1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

3) The fee customarily charged in the locality for similar legal services.

4) The amount involved and the results obtained.

5) The time limitations imposed by the client or by the circumstances.

6) The nature and length of the professional relationship with the client.

7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

8) Whether the fee is fixed or contingent.

*Muscare v. Quinn,* 614 F.2d 577, 579 (7th Cir.1980) ("*Muscare II*").

■ The court of appeals has also held that a district court considering a request for attorney's fees under § 1988 should consider the number of hours "ordinarily necessary competently to prepare comparable cases." *Bonner,* 657 F.2d at 934. If a claim is exorbitant or the time presenting it is unnecessarily high, we may in our discretion refuse further compensation. *Muscare III,* 680 F.2d at 45; *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir.1980). In addition,

we may reduce a request for fees where duplication of effort has occurred. *Neely v. City of Grenada,* 624 F.2d 547, 552 (5th Cir.1980); *Northcross v. Board of Education,* 611 F.2d 624, 636–37 (6th Cir.), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Hickman v. Board of Education,* 513 F.Supp. 659, 661 (S.D.Ohio 1981).

In order to determine the reasonableness of plaintiffs' efforts on the appeal, we must first examine the order appealed from. The text of the district court's June 30, 1981 order ran to six pages. The first two and one-half pages concerned making the preliminary injunction in *Preston* final, from which no appeal was taken. *Preston v. Thompson,* No. 78 C 3512, slip op. at 1–3 (N.D.Ill. June 30, 1981). The rest of the opinion dealt with the attorney's fees question. The court's discussion of the *merits* of this issue included only four paragraphs. One three-sentence paragraph concluded that the ending of the deadlock at Pontiac prison was a result of the *Preston* lawsuit. *Id.* at 4. In the second paragraph, the court held that adverse financial impact on the defendants did not warrant denial of fees. *Id.* The third paragraph was a brief discussion of whether plaintiffs had engaged in duplicative work. *Id.* at 4–5. In the fourth and final paragraph, the court stated that it had "applied all of the standards enunciated in *Muscare v. Quinn,* 614 F.2d 577 (7th Cir.1980)." *Id.* at 5. Without elaboration or further discussion, the court held that certain of plaintiffs' attorneys were entitled to a .50 multiplier, and it proceeded directly into a listing of the fees awarded. *Id.* at 5–6. Thus ended the opinion.[2]

Not surprisingly, one of the three arguments made by defendants on appeal was that "[t]he district court did not satisfy its responsibility to make specific findings so that its award could be properly reviewed." Brief of Defendants-Appellants at 21.

They also argued that "the district court did not even articulate in its order why it was imposing a multiplier upon the award," *id.* at 24, and that the lack of an articulated basis for the use of the multiplier warranted reversal. Finally, the defendants attacked the district court's failure to distinguish between *Preston* and *Prisoners of Pontiac* for the purposes of the fees award, arguing that because no final relief had been entered in the latter case, fees for that case were not warranted. *Id.* at 13. They also argued that the district court's order did not indicate that the court had denied fees for claims as to which plaintiffs had not prevailed, thus meriting reversal and remand. *Id.* at 17.

Defendants' appeal, therefore, had as its central focus the apparent inadequacy of the district court's explanation and justification of its award. The amount of the award—$101,000—was rather high, as civil rights litigation goes.[3] In addition, the district court had applied a multiplier to the fees awarded to certain of plaintiffs' attorneys. In these circumstances plaintiffs were justifiably concerned as to whether the award would withstand appeal. Indeed, defendants had cited appellate-level authority for the proposition that the absence of specific findings by the district court was reversible error. *King v. McCord,* 621 F.2d 205, 207 (5th Cir.1980); *Northcross v. Board of Education,* 611 F.2d 624, 636 (6th Cir.), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). *See also Loctite Corp. v. Fel-Pro, Inc.,* 667 F.2d 577, 585 (7th Cir. 1981) ("Whether the award [of attorney's fees] is appropriate can only be determined after a review of a detailed schedule which includes the services performed, the attorney responsible for carrying out that service, the number of hours expended and the rate charged, and careful consideration of all other pertinent factors") (cited by the court of appeals in *Preston II,* slip op. at 6).

**2.** We take judicial notice that the opinion was issued on the last day of Judge Crowley's service as a judge of this court. His resignation was effective at the close of business on June 30, 1981.

**3.** We do not suggest that the award was in any way uncalled for. The court of appeals found "the overall award of attorney fees reasonable", *Preston II,* slip op. at 6, and we agree totally with this conclusion.

And while the district court had stated that it had considered the factors enumerated in *Muscare II,* it had not discussed those factors. There were, in effect, few if any findings upon which the court of appeals could base its review. Plaintiffs' attorneys felt that the absence of findings by the district court, combined with defendants' challenge centered on the alleged inadequacy of the lower court's ruling, called for an effort to justify the award by means of a discussion of the history, progress, and results of the litigation. Affidavit of Flint Taylor ("Taylor Aff.") ¶ 2a–f. In effect, plaintiffs attempted to provide the basis for the award that the district court had not provided, in order to avoid a ruling that the district court's limited findings were clearly erroneous and that it had abused its discretion.

We recognize that the court of appeals, in its July 21 order, in effect "held" that the length of plaintiffs' opening brief on appeal was *prima facie* evidence that plaintiffs had spent an unreasonable amount of time on the appeal. We think that plaintiffs' submission here has rebutted that *prima facie* showing. Forty-five of the seventy-nine pages of plaintiffs' initial brief were devoted to a recitation of the facts. Plaintiffs quite reasonably believed this necessary in order to sustain the district court's brief opinion.[4] The fact that the award plaintiffs' attorneys were attempting to have affirmed was one for their own fees does not, and cannot, alter our consideration of this question. Congress has, in § 1988, established a national policy that awarding attorney's fees to prevailing civil rights litigants is necessary to effectuate this nation's highest law, the Constitution. *See*

H.R.Rep. No. 1558, 94th Cong., 2d Sess. at 1 (1976) (quoted in *Gates v. Collier,* 616 F.2d 1268, 1274 (5th Cir.1980)). Any suggestion that plaintiffs' response to defendants' appeal was made in plaintiffs' attorneys' self interest, while perhaps true, is irrelevant to our consideration of whether that response was overdone. We must consider plaintiffs' attorneys' efforts on their own merits. We turn, therefore, to a consideration of those efforts.

Approximately 10 hours were spent by plaintiffs' four attorneys on appeal (Flint Taylor, David Thomas, Gerald Block, and Shelley Bannister) in the initial reading of defendants' appeal brief and conferences concerning the response. This time was divided more or less evenly among the four.[5] The bulk of the time on the appeal was spent reading the record and drafting the statement of facts, which we have already discussed. This occupied 93 hours of attorney time, nearly all of it by Taylor. The argument section of the brief was divided in three parts: the issue whether plaintiffs substantially prevailed in the district court; the district court's application of the *Muscare II* criteria; and the use of the multiplier. The drafting of the argument section took 52.25 hours (including legal research). Each of the three arguments made was handled almost entirely by a single attorney. Revision and editing of the brief required 40 hours: 25.5 by Taylor, 9.55 by Thomas, 17 by Block, and 7 by Bannister. Taylor spent 3.25 hours handling the final proofreading of the brief.

As we have noted, plaintiffs cross-appealed from the award of attorney's fees. A short (3 page) section in support of the

---

**4.** This was especially true concerning the use of the multiplier. As plaintiffs point out, the court of appeals for this circuit had never before upheld a multiplier in a published decision under § 1988 and indeed had reversed a multiplier award in a prisoner § 1983 case, *Bonner v. Coughlin,* 657 F.2d 931 (7th Cir.1980). Moreover, in the only Seventh Circuit case to implicitly recognize the validity of a multiplier under § 1988, *Kamberos v. GTE Automatic Electric, Inc.,* 603 F.2d 598 (7th Cir.1979), the court had reduced the multiplier from 50% (the same as the multiplier awarded here) to 25%.

*Id.* at 604. For these reasons, along with the absence of findings in the district court opinion supporting the use of a multiplier, plaintiffs reasonably were concerned that the award would be overturned. *See* Taylor Aff. ¶ 2d.

**5.** For the sake of brevity, we will not cite to the attorneys' affidavits in discussing the time spent on each phase of the appeal. We have, however, drawn our findings from those affidavits, which were admirably detailed and broken down.

cross-appeal was included in plaintiffs' initial brief; however, no time is attributed to this section. Plaintiffs' reply brief on the cross-appeal required 25.25 hours of time: 15 (all by Taylor) in research and drafting, and 10.25 (8 by Taylor; 2.25 by Thomas) in editing and revision.

Preparation for oral argument took 11 hours, 10 of them by Taylor, who argued before the court of appeals. The argument itself is billed as one hour of Taylor's time. Altogether, plaintiffs' attorneys claim approximately 245 hours on the appeal itself.

With the exception of the revision and editing of the briefs, there is little duplication of effort. We think, however, that the 49 hours spent by four attorneys revising and editing a relatively straightforward brief [6] were somewhat duplicative and were excessive. We do not believe that the use of four attorneys in and of itself was excessive; we are aware from our experience on the bench that it is not unusual for four attorneys (or even more) to be involved to a certain extent in writing briefs in commercial litigation as well as civil rights litigation.[7] However, the time spent was, in the circumstances presented here, somewhat overindulgent. We will reduce by half the time spent by each attorney in revising and editing the plaintiffs' main brief on appeal.

While we are persuaded that plaintiffs' statement of facts and arguments in their main brief were not overly long (despite their having exceeded the 50-page limit) and that the statement of facts and the arguments made were needed to respond to points raised by defendants in their brief, we think that given the relative straightforwardness of the issues involved, the time spent was more than "ordinarily necessary competently to prepare" the case. See *Bonner v. Coughlin,* 657 F.2d 931, 934 (7th Cir.1981). We think that reduction by one-third will excise the "extra" time spent by plaintiffs' attorneys. The same is not true, however, of the time spent preparing for oral argument. Ten hours does not constitute overindulgence.[8]

Plaintiffs' reply brief in support of the cross appeal is a different matter altogether. The filing of the cross-appeal itself clearly was not unwarranted. *See Davis v. Murphy,* 587 F.2d 362, 365 (7th Cir.1978) (per curiam) ("If counsel were dissatisfied with the district court award, he should have filed a cross appeal in this court."). As plaintiffs explained in the section of their brief devoted to the cross-appeal, the district court's limited findings did not explain the amount of hours excluded as duplicative. However, plaintiffs' efforts on the cross-appeal appear to have been somewhat half-hearted. Only 2½ pages of their initial brief were devoted to the cross-appeal, and only 2 pages of the reply brief, which ostensibly was to address the cross-appeal alone, dealt with the alleged inadequacy of the district court's award. Indeed, most of the purported reply brief actually was a second response on defendants' appeal from the award of attorney's fees, something that Fed.R.App.P. 28 does not permit. We think that, for these reasons,

---

6. Our conclusion that the brief and the issues were relatively straightforward does not mean that plaintiffs' attorneys' efforts were wholly unwarranted. As we have stated, they reasonably were concerned that a factual basis had to be presented for the district court's award. Our conclusion is, therefore, limited to the reasonableness of the hours spent on the appeal.

7. In any case, attorneys Block and Bannister spent a relatively small proportion of the total time used on the appeal. It was handled mainly by Taylor and Thomas.

8. We categorically reject defendant's suggestion that we exclude, or compensate at a lower rate, time spent "for tasks such as research, correcting, and certain editing tasks which could have been performed by a nonlawyer ...." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Attorney's Fees on Appeal at 8. To adopt a rule that would in effect compel attorneys to leave legal research to paralegals or law students would be, at the very least, reckless (if an attorney chooses to farm such tasks out, that is fine, and he or she will be compensated accordingly). As for proofreading, the hours spent doing the latter in this case were minimal. Moreover, during our career on the bench we have not failed to notice an inordinate degree of "sloppiness" in the proofreading of briefs. Such errors distract a court. We cannot say that such time should be compensable only at non-attorney rates.

plaintiffs should be denied compensation for the time they claim on the cross-appeal.[9] With the reductions we have applied, the compensable time on appeal is as follows:

| | | |
|---|---|---|
| Initial reading and conferences: | 2.25 | Taylor |
| | 3.5 | Thomas |
| | 1.5 | Block |
| | 3.0 | Bannister |
| Facts section of brief: | 58.75 | Taylor |
| | 3.0 | Thomas |
| Argument section of brief: | 17.5 | Taylor |
| | 15.75 | Thomas |
| | 1.5 | Bannister |
| Editing: | 12.25 | Taylor |
| | 4.75 | Thomas |
| | 8.5 | Block |
| | 3.5 | Bannister |
| Proofreading: | 3.25 | Taylor |
| Argument: | 11.0 | Taylor |
| | 1.0 | Thomas |
| TOTALS | 105.0 | Taylor |
| | 28.0 | Thomas |
| | 10.0 | Block |
| | 8.0 | Bannister |

The next question we must address is the applicable hourly rate. Plaintiffs have requested $125 per hour for Thomas and Taylor, and $75 per hour for Block and Bannister. *Defendants have not objected to these hourly rates.* Messrs. Taylor and Thomas are both experienced civil rights attorneys, as evidenced by the listing in their affidavits of lawsuits in which they have participated. We have observed both of them on numerous occasions in this court. Both are effective advocates, as further evidenced by their success on the merits of this case and on obtaining the award of attorney's fees (and in prevailing on defendants' appeal

from that award). In the absence of any objection by defendants, $125 per hour is eminently reasonable for attorneys of their experience and skill. While our acquaintance with Mr. Block and Ms. Bannister is of a somewhat shorter duration, their affidavits indicate that while they are younger than Messrs. Taylor and Thomas and somewhat less experienced, they nevertheless have considerable experience at the civil rights bar. Accordingly, $75 per hour is reasonable compensation for their services.

The amounts awarded plaintiffs' attorneys for prevailing in their appeal from Judge Crowley's award are as follows:

| | |
|---|---|
| Flint Taylor: | $13,125 |
| David Thomas: | 2,940 |
| Gerald Block: | 750 |
| Shelley Bannister: | 600 |

In closing, we must note that this case is nothing like *Muscare III.* The major distinction is that in *Muscare III,* plaintiff's attorney was appealing from the district court's denial of an additional award of fees for time spent litigating his claim for fees on the case itself. In this case, by contrast, the appeal that occasioned the work detailed above was taken by defendants. The time we have compensated is that reasonably spent responding to defendants' attack on the district court's award of fees.[10]

The next aspect of the litigation as to which plaintiffs claim fees involves the proceedings in this court after the June 30, 1981 award of attorney's fees relating to whether the judgment would be stayed pending defendants' appeal. Plaintiffs opposed the motion for stay and also argued that if a stay were granted, defendants should be required to post a supersedeas bond pursuant to Fed.R.Civ.P. 62(d). In order to determine plaintiffs' entitlement to

---

**9.** We do not think that any further "penalty" is required, however, for this extra brief. Defendants took only two pages to respond to the cross appeal, giving it only the weight that it was due. The court of appeals similarly dealt with the issue summarily. We do not think that the cross appeal unduly added to the burden on defendants or the court.

**10.** Under the *Muscare II* factors, it must be noted that plaintiffs were completely successful in upholding the attorney's fees award. In addition, most of the time spent on the brief in response to the appeal came within a relatively short period, *see, e.g.,* Time Sheets of G. Flint Taylor, and we daresay the case took up a fairly large proportion of Messrs. Taylor and Thomas' time during that period.

fees in connection with the motion for stay and the motion to require a bond, we must determine whether they were "prevailing parties" as to those aspects of the litigation within the meaning of § 1988. While the stay and bond issues were connected with the litigation in which plaintiffs established their entitlement to attorney's fees, they in no way bore upon that issue. These questions, we think, are related more closely to the question of *collection* of the judgment: whether a stay is granted determines when a plaintiff can collect his or her judgment. Under *Balark v. Curtin,* 655 F.2d 798, 802–03 (7th Cir.1981), a prevailing party in a civil rights case is entitled to attorney's fees under § 1988 for time spent collecting a judgment.

The question we must address, therefore, is whether plaintiffs' efforts in connection with the motion for stay helped to advance in any way the collection process, either in terms of time or in establishing rights, principles, or entitlements that aid in collection. For example, had plaintiffs prevailed on the motion to require defendants to post a bond pending appeal, their efforts at collection would have been materially advanced, as they would have been afforded security against any inability of defendants to pay the judgment. And had defendants' motion for stay been denied, plaintiffs would have been entitled to begin efforts at collection during the pendency of the appeal.

In the present case, neither the motion for stay nor the related motion to require a supersedeas bond was ever ruled upon. This was due initially to our illness during the period in question and later to the difficulty of the issues raised.[11] In these circumstances, it is difficult to say which party "prevailed." Perhaps the more pertinent question is which party should bear the risk of our nondecision of the stay and bond issues. Under *Bond v. Stanton,* however, plaintiffs' attorneys are entitled to compensation for the time they reasonably spent in establishing and negotiating their claim to

the fee. *Bond,* 630 F.2d at 1235. We think that the same test applies to efforts to collect that fee, and therefore that plaintiffs' attorneys are entitled to compensation for the time reasonably spent in advancing the collection process. The question we must face, then, is whether plaintiffs' efforts to oppose the motion for stay and their efforts to require defendants to post a bond as a condition of a stay were reasonably required to advance the collection process. In other words, if plaintiffs simply were attempting to knock down a straw man they themselves had set up, the test of "reasonable necessity" would not be met. To decide this question requires us to discuss briefly the merits of the stay and bond issues. In doing so, we regard the two issues essentially as one, as plaintiffs raised the bond question in their response to the motion for stay and quite correctly pointed out that Fed.R.Civ.P. 62(d), the rule invoked by defendants as authority for the requested stay, itself raises the bond question, albeit not in mandatory terms. *See Country Fairways, Inc. v. Mottaz,* 539 F.2d 637, 641 (7th Cir.1976) (requiring a bond is within the discretion of the district court). *See also, e.g., Federal Prescription Service, Inc. v. American Pharmaceutical Association,* 636 F.2d 755, 759 (D.C.Cir.1980).

The purpose of a supersedeas bond is to secure the prevailing party against any risk that the judgment debtor will no longer be able to meet its obligations pending appeal and to protect the prevailing party from any costs it incurs in foregoing execution of the judgment until the appeal is decided. *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1190–91 (5th Cir.1979); *Moore v. Townsend,* 577 F.2d 424, 426–27 (7th Cir. 1978). *See* 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 208.06[2] at 8–19 (1982). The burden is on the party requesting a stay to demonstrate that a bond should not be required. *Poplar Grove,* 600 F.2d at 1191. *See also* 9 J. Moore, *supra* at ¶ 208.06.

---

**11.** After returning to the bench in February 1982, we requested additional briefs from the parties to address the difficult questions of law that their earlier submissions had not considered. Those briefs were filed in March 1982.

In connection with defendants' request that they be granted a stay without bond, defendants argued that the state's power to levy taxes and thereby avoid any risk of insolvency, and the interest in the integrity of the public fisc and the potential financial burden on other state programs that a bond would cause, were special circumstances that weighed against requiring a bond. However, the materials submitted to us by defendants established that, contrary to their assertions, there was a potential risk of non-payment against which plaintiffs arguably were entitled to be secured. Defendants contended that because the action had been brought against state officers in their official capacities, the state was solely responsible for the judgment. Given the absence of a finding of bad faith on the part of the officials, this contention clearly was correct. *See Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Skehan v. Board of Trustees,* 590 F.2d 470, 495 (3d Cir.1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *Pickett v. Milam,* 579 F.2d 1118, 1120–21 (8th Cir. 1978). *See also Teitelbaum v. Sorenson,* 648 F.2d 1248, 1250 (7th Cir.1981). Defendants maintained, however, that plaintiffs were required to seek collection of the judgment in accordance with the procedures established in Illinois for collecting a judgment against the state through the Illinois Court of Claims. *See* Ill.Rev.Stat. ch. 37, §§ 439.1 —439.24–9 (1981). Under this procedure, a complaint must be filed in the Court of Claims attaching the judgment order. That court makes an award based on the complaint and submits the award to the Illinois General Assembly as part of a special appropriations bill containing a statement of all decisions in favor of claimants rendered by the court. The General Assembly votes on such appropriations twice yearly, around early July and again late in the calendar year. Even assuming that the procedure outlined by the state worked without any substantial hitches, it was likely that plaintiffs would be required to wait a not insubstantial period before collecting their judgment.[12] Moreover, there was a possibility that the legislature would vote not to appropriate the money to which plaintiffs were entitled.[13] We do not express any judgment on the merits of the bond issue, which of course is now moot. But given the uncertainties in the procedure held out by defendants as the exclusive means by which to collect a judgment against the state, we think that plaintiffs' efforts to require the state to post a bond as a condition of a stay were reasonably required to advance the collection process. *See Strama v. Peterson,* 537 F.Supp. 668 (N.D.Ill.1982) (Shadur, J.) (denying motion for stay without bond by defendant who was entitled to indemnification by city of Chicago and who argued that city's solvent financial condition was circumstance supporting granting of stay without bond; court held that delays in collection process against city were sufficient to warrant requiring bond as condition of stay). Therefore, plaintiffs' efforts in connection with the defendants' motion for stay are compensable under § 1988. We turn next to the time claimed by plaintiffs' attorneys to determine whether it is disproportionate to the tasks undertaken.

Plaintiffs' response to the motion for stay, filed before this court on September 1, 1981, was five pages long. It did not involve, in our view, research beyond that spent on the appeal itself. While it was responsive to the motion, it did not address the difficult questions raised by the request for a supersedeas bond. We think that the 11.75 hours claimed by plaintiffs' attorneys (9.25 for Block; 2.5 for editing by Taylor) are disproportionate to the task and should be reduced by half. Plaintiffs claim 18.25 hours for drafting their brief in support of the motion for a supersedeas bond (15.25 by

---

**12.** As it turned out, while the district court's award of attorney's fees was affirmed on May 21, 1982, plaintiffs did not receive a check from the state until more than four months later.

**13.** *See* Plaintiffs' Memorandum of Law Regarding Court's Authority to Require Defendants to Post Supersedeas Bond, Exs. A & B (filed Sept. 23, 1981). As things happened, the legislature voted to approve the award in apparently routine fashion.

Thomas; 3.0 by Block). None of this time was duplicative, and the quality of the work done was plainly adequate.[14] The amounts we will award plaintiffs' attorneys for the work spent in connection with the stay and bond issues are as follows:

Flint Taylor: 1.25 response to motion for stay
.5 court appearance
1.75 × $125/hour = $218.75
David Thomas: 15.25 brief concerning bond; editing
15.25 × $125/hour = $1906.25
Gerald Block: 4.5 response to motion for stay
3.0 editing brief re bond
7.5 × $75/hour = $562.50

After the court of appeals' May 1982 affirmance of the award of fees, Mr. Taylor spent 3 hours on certain post-appellate work in the court of appeals. This work involved two motions. The first was characterized by the court of appeals in its July 21, 1982 order as a motion for correction of the May 24, 1982 order (concerning the award of costs) and for remand. The second was a motion for attorney's fees on appeal. The latter motion led to the July 21, 1982 order to which we have made reference. As to the motion for correction of the May 24 order, plaintiffs were successful: the May 24 order had awarded costs to defendants in their appeal from the judgment and to plaintiffs in their cross appeal, and the court of appeals corrected the apparent error so that the prevailing party in each appeal would recover its costs. The motion for attorney's fees was not successful. Plaintiffs were, however, justified in making the motion, as the court of appeals' May 24 order had not addressed plaintiffs' earlier request for attorney's fees on appeal.[15] The 3 hours claimed by Mr. Taylor are allowed, at $125 per hour, for a total of $375.

■ The next phase of the litigation is what plaintiffs' attorneys term "post decision work in the district court." Much of this time relates to plaintiffs' first motion for a turnover order on the principal amount of the attorney's fees award, plus interest, and for what plaintiffs term "collection" work. It is clear that time spent in collecting a judgment in a civil rights action may be the subject of an award of attorney's fees. *Balark v. Curtin*, 655 F.2d 798, 802–03 (7th Cir.1981). Plaintiffs argue that the basis for their motion was that defendants had indicated that they would resist payment of the award of fees. Defendants deny this allegation, arguing that in their brief on the motion for stay pending appeal, they had stated that payment would be made if the award were affirmed. Therefore, they argue, plaintiffs jumped the gun with their motion and should be denied compensation for the time spent on it. We think that defendants' contention misapprehends the nature of plaintiffs' motion for a turnover order. Defendants had, it is true, indicated that payment would be made; however, they had also maintained that the sole means by which the judgment could be satisfied was through the Illinois Court of Claims. Plaintiffs' motion asked us in effect to order defendants to forego that procedure. Shortly after plaintiffs' motion was filed, defendants agreed to stipulate in the Court of Claims to the award. The stipulation undoubtedly speeded up the process; the Court of Claims acted only a few days after the complaint was filed there by plaintiffs' attorneys. We think it reasonable to infer that plaintiffs' motion caused defendants' prompt response. The time spent on the motion for turnover order is not excessive or duplicative and therefore is allowed.

14. While both Thomas and Block claim compensable time for editing and revising the brief, we do not find that "duplicative" in the sense necessary to reduce the hours claimed. It is not unusual for two attorneys to work on a brief; indeed, having a second attorney edit a brief often improves its quality.

15. While plaintiffs' initial brief on appeal had requested an award of attorney's fees on appeal, *see* Plaintiffs' Response to Defendants'

Brief [on Appeal] at 79 n. *, the May 24, 1982 order affirming the judgment below did not address that request. The court of appeals' July 21, 1982 order stated that "[i]n connection with the motion for attorney's fees, plaintiffs contend *for the first time* that they should receive additional fees for [the appeal]." *Preston III*, slip op. at 2 (emphasis in original). This assertion simply was incorrect.

Part of the time claimed by plaintiffs for the post-decision work in the district court relates directly to the availability of interest on the award of fees. This includes 2½ hours claimed for a motion to have the case transferred to us from another judge of this court. By way of background, we had initially heard plaintiffs' motion for a turnover order as emergency judge, as Judge Crowley had left the bench immediately after making the attorney's fees award in this case. After the court of appeals remanded the case to the district court (sometime after we initially considered the motion for a turnover order and after defendants had agreed to stipulate to payment of the principal amount of the award), the case was assigned to Judge Bernard M. Decker. By that time, all that remained was the question of interest on the award. Plaintiffs had raised this question in the motion for a turnover order, and as a result we already had some familiarity with the issue. Thus, the motion to have the case reassigned to us, which was granted, resulted in a savings of judicial and attorney time. The time spent on the motion, however, relates directly to the question of the availability of interest, a matter which is now pending before us in connection with another motion filed by plaintiffs. The compensability of Mr. Taylor's time connected with that issue will turn upon his success thereon. The same is true of the other time he claims for "post-decision work" relating directly to the interest question. For the present, we will defer consideration of this aspect of the attorney's fees motion and will address it after our decision involving the interest issue.

The final aspect of the request for attorney's fees involves time spent on the present motion, including the drafting of affidavits to support the request for fees on appeal, the compiling of time sheets, and drafting the motion for fees and supporting memoranda of law. Only Mr. Taylor has filed a claim for this time, for a total of 15.25 hours. Defendants have not contested this request. However, the question whether Mr. Taylor should be awarded attorney's fees in connection with establishing his entitlement to attorney's fees incurred in upholding his June 30, 1981 award of fees raises the "Chinese boxes" metaphor suggested by the court of appeals in *Muscare III*, 680 F.2d at 44. At some point, it is evident that compensation for time spent litigating entitlements to attorney's fees for establishing an entitlement to fees is no longer compensable. We think that once plaintiffs have established that they are entitled to attorney's fees and have been granted an award of fees for establishing that entitlement, no further fee awards on the attorney's fees aspect of the case should be allowed. The request for fees incurred on the present motion is denied.

▪ To summarize, plaintiffs' attorneys are entitled to an award of attorney's fees on appeal and other related matters in the following amounts:

| Appeal: | Flint Taylor | $13,125 |
|---|---|---|
| | David Thomas | 2,940. |
| | Gerald Block | 750 |
| | Shelley Bannister | 600 |
| Post-appeal work in court of appeals: | Flint Taylor | $ 375.00 |
| Motion for stay and for bond: | Flint Taylor | $ 218.75 |
| | David Thomas | 1,906.25 |
| | Gerald Block | 562.50 |
| Motion for turnover order: | Flint Taylor | |
| | drafting motion | 187.50 |
| | court appearances | 125.00 |
| TOTALS: | Flint Taylor | $ 14,031.25 |
| | David Thomas | 4,846.25 |
| | Gerald Block | 1,312.50 |
| | Shelley Bannister | 600.00 |
| | | $ 20,790.00 |

This award will bear interest from the date of entry in the amount specified in 28 U.S.C. § 1961(a) (West Supp. 1982). *See, e.g., Spain v. Mountanos*, 690 F.2d 742, 747–48 (9th Cir.1982) (plaintiff entitled to interest on award of attorney's fees under § 1988); *Gates v. Collier*, 616 F.2d 1268, 1272–79 (5th Cir.1980); *McPherson v.*

*School District,* 465 F.Supp. 749, 765 (S.D. Ill.1978).

Judgment will enter in favor of the plaintiffs and against the defendant in the amount of $20,790 as and for attorneys' fees with payment to be made directly to Flint Taylor, $14,031.25, David Thomas, $4,846.25, Gerald Block, $1,312.50 and Shelley Bannister, $600.00. Interest in the statutory amount to accrue upon entry of this judgment.